STATE of Iowa, Appellee,

v.

Phillip Jerome MAYES, Appellant.

No. 62620.

Supreme Court of Iowa.

Dec. 19, 1979.

Rehearing Denied Jan. 21, 1980.

388

Alfredo G. Parrish, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Selwyn Dallyn, Asst. Atty. Gen., and Donald F. Starr, Asst. Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS, and McGIVERIN, JJ.

HARRIS, Justice.

There are five assignments of error in the defendant's appeal from his conviction of assault with intent to inflict serious injury in violation of sections 708.1 and 708.2(1), The Code, 1979, and carrying weapons in violation of section 724.4, The Code, 1979. We affirm the trial court.

Shooting cases are not known for logical factual backgrounds. By nature they tend to be absurd. Yet, even for a shooting case, the facts here are unusually bizarre.

Richard Baker, the victim, was in the company of two girlfriends at a Des Moines bar during the early morning hours of June 3, 1978. At about closing time Baker engaged in squirting the girlfriends with a toy water gun. This activity took place both inside and outside the bar. When Baker chased the girls to an adjacent parking lot he came near the defendant who warned Baker not to get him wet. Not surprisingly, though, a shot did strike the defendant. This produced an unfriendly remark, so Baker squirted him again. Baker turned to

walk back toward the tavern whereupon the defendant hit Baker on the back of his trousers with a spray of beer. Baker became angry and, uttering an ugly and obscene threat, returned to slap the defendant in the face.

The defendant then made another remark after which Baker again undertook to leave. When he saw the defendant draw a gun, however, Baker issued a further challenge and began to walk back toward the defendant. Baker then stopped, this time because of the gun. While the two stood about ten to twelve feet apart the gun discharged. Baker was struck in the abdomen and fell to the ground. The defendant fled.

A passing police patrol was alerted when one of the officers heard the shot and saw Baker fall. Apparently he also saw another person with defendant who escaped. Other facts will be recited as they relate to the assignments of error.

I. Over defendant's objection two exhibits, a .25 caliber handgun and a gun handle, were admitted into evidence. Defendant argues that Iowa R.Crim.P. 13.5 was thereby violated inasmuch as he was not given advance notice of the exhibits. Rule 13.5 provides:

If, subsequent to compliance with an order issued pursuant to this rule, either party discovers additional evidence, or decides to use evidence which is additional to that originally intended for use, and such additional evidence is subject to discovery under this rule, the party shall promptly file written notice of the existence of the additional evidence to allow the other party to make an appropriate motion for additional discovery.

Prior to trial defendant moved for discovery under rule 13 so, unless excused, the State was required to file written notice of the evidence. No such notice was given but we nevertheless find no reversible error. The defendant had actual knowledge of the existence of the exhibits and of the State's intention to use them as evidence.

Defendant knew that the State had seized the gun from his apartment and had

kept it. This knowledge is apparent because the defendant filed a pretrial motion to suppress the introduction of the pistol. In addition he was advised prior to trial that two state agents would testify that a .25 caliber pistol had been seized from his apartment and that the bullet which struck the victim was fired from it.

Iowa R.Crim.P. 13.6(c) deals with failures to comply with orders on discovery:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may upon timely application order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, *or it may enter such other order as it deems just under the circumstances.* [Emphasis added.]

We hold that the order of the trial court admitting the exhibits was "just under the circumstances" under the foregoing rule. Accordingly the defendant's first assignment is without merit.

II. Defendant's second assignment of error is a wholly independent attack on the same exhibits. The exhibits were seized after a warrantless entry of the defendant's apartment. The State urges that the search can be justified on the basis of exigent circumstances. We listed the guidelines for exigency in *State v. Jones,* 274 N.W.2d 273, 275–76 (Iowa 1979):

(1) a grave offense is involved;

(2) the suspect is reasonably believed to be armed;

(3) there is probable cause to believe the suspect committed the crime;

(4) there is strong reason to believe he is on the premises;

(5) there is a strong likelihood of escape if not apprehended; and

(6) the entry, though not . . . consented to, is peaceable.

*See State v. Johnson,* 232 N.W.2d 477, 479–80 (Iowa 1975).

■ The circumstances giving rise to the entry into the defendant's apartment involved a separate crime. We adopt the trial court's findings in overruling the defendant's motion to suppress:

On June 27, 1978, a liquor store located at 409 5th Street, Des Moines, Iowa, was robbed sometime between 5:00 p. m. and 6:00 p. m. The victim of the robbery described the suspect as a black male wearing a white visor, a white nylon jacket, blue jeans, and a white handkerchief over his face. The suspect took money in the form of currency and change and placed it in a blue Bankers Trust bank bag and fled.

A Mrs. Bernice Bedwell was parked on Fourth Street between Grand and Locust at approximately the same time. She observed a dark vinyl over blue Buick parked at the Savery Hotel on the west side of Fourth Street containing three black male adults. One subject got out of the vehicle on the passenger side and walked west through the alley toward the liquor store. Approximately ten minutes later the same person was seen coming out the Hotel Savery carrying a blue bank bag. This person was dressed in a white visor hat, a white nylon jacket, and blue jeans. After coming out of the Savery, he got into the blue Buick and drove away. Another witness provided the police with the license plate number for the blue Buick which was 77–FIE601. Approximately twenty minutes after the robbery officers located the blue Buick, license plate number 77–FIE601, at 1600 Oakland, the address of the defendant, Phillip Mayes.

This information was relayed to a magistrate and a search warrant was obtained to search the defendant's apartment at 1600 Oakland, Apartment 4, for "one bank bag having a rectangle shape, blue in color with a zipper, one small blue steel automatic hand gun, one dark blue/light blue 1973 Buick Electra four door bearing Iowa '78 plates 77–FIE601, and one blue 1970 Dodge bearing 85–GLC353."

An officer not then involved in the investigation of the liquor store robbery

recognized the license plate number that was broadcast over the police radio channel as belonging to the defendant. He advised the officers involved in the case as to the name of the individual to whom the car belonged and gave them the defendant's current address. Several officers proceeded to the defendant's apartment at 1600 Oakland, Des Moines, Iowa, where they observed the blue Buick, license plate number 77–FIE601, sitting in the parking lot. One officer testified that he was at the defendant's apartment within minutes after receiving the defendant's license plate number. Another officer testified that he was at the defendant's apartment within 15–20 minutes after the robbery occurred, and when he arrived there were already several officers at the apartment. The hood of the car was warm, and inside the car in plain view was a white visor hat. Two officers remained outside of the apartment building while several others went inside. The apartment manager let the officers in the building and gave them a key to the defendant's apartment. The officers went to apartment number four where the defendant lived, heard noises coming from inside the apartment, knocked on the door, identified themselves as police officers, and demanded that the door be opened.

Meanwhile, an officer on the outside had spotted two black male hands pushing against a screen window. The hands were carrying paper money. When he instructed the individual to halt, the individual withdrew and closed the curtains. This information was relayed to the officers on the inside of the building. The officers on the inside of the building used the manager's key in the defendant's door but could not get it open. The door was then kicked several times before being opened from the inside.

Once inside, the police officers observed three black males and three black females. A pat-down search of the three males disclosed no weapons. The officers checked the other rooms for additional people but none were found.

After the apartment had been secured, a clerk from the liquor store was brought to the apartment, and she identified one of the males as being the robber. The defendant and the other male were not identified by the clerk, but all three were arrested.

Sometime after the entry into the apartment and the three suspects were arrested, an officer arrived with a search warrant and a full-blown search was conducted. During the search the officers discovered and seized one blue bank bag with a Bankers Trust label on it, one .25 caliber automatic handgun, one white visor hat, one police-style pouch containing .25 caliber bullets, and assorted paper currency and rolls of coins.

We agree that exigent circumstances were shown. In considering the first of the six criteria we said in *Jones,* 274 N.W.2d at 276, "[t]he societal interest in the apprehension of suspected felons is considerable, if not singularly compelling." The second, third, and fourth criteria, given the circumstances of the robbery and the identification of the escape car at defendant's address, were met. As to the fifth criterion, the likelihood of escape, we have said ". . . it is unreasonable and unrealistic to say peace officers must wait outside while a suspect remains secure inside is home, free to arm himself . . . or plan an escape . . ." *Johnson,* 232 N.W.2d at 479–80. There was evidence of intended escape. The officer saw hands pushing against the screen window. Finally, we believe the sixth criterion was satisfied inasmuch as the entry, under the circumstances, was sufficiently peaceable. We did not hold in *Johnson* that all six criteria must be met in order to show exigent circumstances, only that they are important. *Jones,* 274 N.W.2d at 276. On considering them all we hold the search was justified by reason of the exigent circumstances.

III. The defendant's third assignment of error is a challenge to the chain of custody of another exhibit. Soon after the shooting the victim was taken to the hospital. There a doctor removed the bullet and gave it to a

scrub nurse who gave it to a circulating nurse, who gave it to the relief supervisor, who placed it in an envelope and gave it to one of the patrol officers. The passage of the bullet appears to be routine.

At the police station the bullet was placed in a property locker from which it was removed for transmission to the state crime laboratory. These events also seem routine. At the laboratory the bullet and the defendant's .25 caliber pistol (including its grip) were received by a clerk and were subjected to an expert's testing. The test established the bullet had been fired from the same gun.

■ The defendant believes that under these circumstances there was a break in the chain of custody so that the bullet should not have been admitted into evidence. We recently discussed the requirements for chain of custody of exhibits in *State v. Bakker*, 262 N.W.2d 538, 542–43 (Iowa 1978) and *State v. Jeffs*, 246 N.W.2d 913, 915 (Iowa 1976).

In order to justify the admission of physical evidence it is not required that the chain of custody be shown with perfect precision. The trial court may admit the evidence when satisfied it is:

> . . . reasonably probable that tampering, substitution or alteration of evidence did not occur. Absolute certainty is not required. [Authority.]
>
> [The] judge determines the sufficiency of physical evidence identification in light of the article's nature, circumstances surrounding its custody and the likelihood of intermeddlers tampering with it. A more elaborate foundation is required to identify evidence that is easily substituted, such as marijuana, than is necessary to identify physical evidence with unusual characteristics, such as money, a gun, clothing and a body, or matches and glasses. [Authorities.] Unless [the] decision to admit evidence over a chain-of-custody objection constitutes a clear abuse of discretion, it will not be overturned. [Authority.]

*Bakker*, 262 N.W.2d at 543.

The facts in the present case are somewhat similar to those in *State v. Ubben*, 186 N.W.2d 625, 626–27 (Iowa 1971). In *Ubben* a bullet was removed from a victim's body and admitted over a chain-of-custody objection where several witnesses testified that at trial the item was substantially similar to its state when they had seen it before. In the present case the nurse and the officer who handled the bullet at the hospital both testified at trial that the exhibit appeared to be the same one. Another officer indicated at trial that the exhibit was the same bullet which he had submitted to the state crime laboratory. The firearms comparison expert testified that exhibit 1 was a .25 caliber bullet which had been submitted by the police for examination. This testimony is aided by the presumption " 'that an official would not tamper with the exhibits.' " *State v. Branch*, 222 N.W.2d 423, 426 (Iowa 1974).

We are satisfied the trial court did not abuse its discretion in admitting exhibit 1.

IV. As his fourth assignment of error the defendant asserts that the county attorney was guilty of prosecutorial misconduct in closing argument. The assertion is twofold.

First the county attorney pointed out to the jury that there had been contention between Baker testifying as a witness and the defense attorney. In argument the prosecutor said, "I think you can see also what Mr. Parrish [defense counsel] was trying to do to Mr. Baker. Mr. Baker is not on trial . . . . Mr. Baker is not on trial in this case for smoking marijuana." The exchange between the prosecutor and witness had been stricken from the record when it occurred. When it was referred to in argument the defense counsel at once, but without success, objected, moved for mistrial, and moved to strike.

The second part of the defendant's claim of prosecutorial misconduct stems from when the county attorney volunteered his own definition of hearsay in arguing to the jury: "It was interesting to hear Mr. Parrish tell us that no police officer testified as to what Mr. Baker told them . . . . .

And I think you will recall hearing that word [hearsay] in objection. Police officers can't testify to what somebody else was told them when the defendant isn't there." This also elicited a prompt but unsuccessful objection on the assertion it was "improper argument of advising the court—jury what the law is without advising them the court will instruct them as to what the law is on hearsay evidence."

▮▮▮ We think the objection to the first remark by the prosecutor during his argument should have been sustained. It is improper to argue on matters stricken from the record. *State v. Eaton*, 190 Iowa 212, 215, 180 N.W. 195, 196 (1920). Defendant's second complaint was properly overruled. There is no claim that the definition given by the prosecutor was in any way misleading. Trial lawyers can argue the law and its application to the evidence. So long as they accurately state the law they are ordinarily within their rights under Iowa R.Crim.P. 18(3)(b). *State v. Barton*, 258 Iowa 924, 931, 140 N.W.2d 886, 890 (1966). Of course counsel is bound, in such arguments, by the trial court's determination of the law and is well-advised to acknowledge that the judge will be the one who instructs on the law. It is not proper argument to read from a law book. *State v. McClure*, 159 Iowa 351, 356, 140 N.W.2d 203, 205 (1913). The rules are the same in civil cases. Counsel can argue the law to the jury. *Shephard v. The Chicago, R. I. & P. Ry. Co.*, 77 Iowa 54, 59–60, 41 N.W. 564, 565–66 (1889). Counsel cannot, however, read from law books. *Clark v. Iowa Cent. Ry. Co.*, 162 Iowa 630, 637, 144 N.W. 332, 334 (1913). *See generally* Pearce, Final Argument in Iowa, 15 Drake L.Rev. 115, 116–17 (1966); 75 Am.Jur.2d, Trial, §§ 275–79. *Compare* Annot., 67 A.L.R.2d 245, 256–57, 276, *with* Annot., 66 A.L.R.2d 9, 22–27, 41–42.·

Because we believe it was error for the prosecutor to refer to matters which had been stricken from the record it is necessary to determine whether the error demands a reversal. We have said "the trial court is vested with broad discretion in determining whether alleged misconduct was sufficient to deny a defendant a fair trial, and only when this discretion is abused will this court interfere. [Authority.]" *State v. Wright*, 274 N.W.2d 307, 315 (Iowa 1979). We do not believe sufficient prejudice was shown here to indicate there was abuse. The comment did not refer directly to the defendant, only to the victim's testimony. This is to be contrasted with *State v. Trudo*, 253 N.W.2d 101, 106–07 (Iowa 1977), in which we found no prejudice in a prosecutor's statement that the jury should be concerned about returning the defendant to the community. *See also State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976), in which the prosecutor's conduct improperly ascribed base motives to defense counsel.

Defendant's claim that he is entitled to a reversal by reason of prosecutorial misconduct is without merit.

V. For his final assignment the defendant argues he was entitled to a directed verdict on the assault charge. In considering the propriety of the motion we view the evidence in the light most favorable to the State. Iowa R.App.P. 14(f)(2).

The elements of attempting to commit murder in violation of section 707.11 are:

(1) An overt act

(2) with the expectation to set in motion a force or chain of events which would result in the death of

(3) a person

(4) without justification.·

▮▮▮ The burden was upon the State to prove beyond a reasonable doubt that the shooting was without justification, the fourth element of the offense. To establish there was no justification the State had to prove:

(1) The defendant was the provocator in initiating or continuing the difficulty which resulted in the shooting; or

(2) the defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; or

(3) he did not have reasonable grounds for such belief; or

(4) the force used was unreasonable.

The State had to show only one of these four alternative propositions to prove defendant was not justified in the act.

In *State v. Beyer*, 258 N.W.2d 353, 356 (Iowa 1977), we listed the criteria for testing self-defense and justification of a homicide under our former criminal code. The standards to determine justification by reason of self-defense as explained in *Beyer* are similar under the new criminal code.

We believe a jury question was presented on all elements of the offense. Deadly force as defined in section 704.2(1)–(3) clearly appeared from "[t]he discharge of a firearm in the direction of some person with knowledge of his . . . presence there, even though no intent to inflict serious physical injury can be shown." § 704.-2(3).

We find the defendant's motion for directed verdict was properly overruled.

As all of defendant's assignments are without merit the judgment of the trial court is affirmed.

AFFIRMED.