**STATE of Iowa, Plaintiff–Appellee,**

v.

**Michael Patrick Leon COFFMAN a/k/a Michael Patrick Leon Murray, Defendant–Appellant.**

No. 95–1677.

Court of Appeals of Iowa.

Feb. 26, 1997.

Linda Del Gallo, State Appellate Defender, and Sharon R. Stevens and John M. Priester, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Thomas H. Miller, and Angelina Smith, Assistant Attorneys General, William H. Appel, Wapello County Attorney, and Ron Kelly, Assistant Wapello County Attorney, for appellee.

Heard by HABHAB, C.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

On Monday July 25, 1994, defendant Michael P. Coffman (age sixteen) and Jeremy Allen (age fifteen) attended a driver's education course at Ottumwa High School. During the preceding weekend the boys had argued over Michael's treatment of a girl. Michael brought one of his father's guns, loaded, to the class on Monday. The boys exchanged threats during the class, and afterward, outside the school, Michael shot Jeremy twice and killed him. After waiver of jurisdiction to district court, a jury found Michael guilty of first-degree murder. He was sentenced to life imprisonment.

Michael appeals.

■ *Waiver of jurisdiction.* Our scope of review in determining whether the court abused its discretion in ordering the waiver from juvenile court to district court is de novo. *State v. Bickell,* 493 N.W.2d 100, 102 (Iowa App.1992); *State v. Greiman,* 344 N.W.2d 249, 251 (Iowa 1984). We also review de novo to the extent that the constitutional due process issue is implicated. *State v. Derifield,* 467 N.W.2d 297, 298 (Iowa App. 1991).

■ Michael filed an interlocutory appeal challenging the waiver of jurisdiction to district court. The appeal was denied. He subsequently filed a motion seeking a return of jurisdiction to the juvenile court. Michael claimed the State had not presented exculpatory evidence at the waiver hearing regarding threats and assaults made against him by Jeremy. The district court concluded it had no authority to return jurisdiction to the juvenile court.

Michael maintains the State had access to evidence of Jeremy's threats and assaultive behavior toward Michael but failed to present "all material evidence" to the juvenile court. Such evidence, he maintains, was relevant as to whether an offense had been committed and whether jurisdiction should be waived to district court. Secondarily, Michael argues that a justification defense

would suggest that he was amenable to rehabilitative services from the juvenile court.

Contrary to Michael's contention, Iowa Code section 232.45(5) (1993) does not confer an obligation on the state to present *all* material evidence to the juvenile court in a waiver hearing. Rather, this is an evidentiary section, establishing *admissibility* of all relevant and material evidence at a waiver hearing. *See State v. Wright,* 456 N.W.2d 661, 662, 664 (Iowa 1990). A waiver hearing is dispositional, not adjudicatory. *Id.* at 664–65. If the State were required to present every piece of relevant and material evidence at the waiver hearing, this would effectively transform the hearing into an adjudicatory trial and undermine the dispositional purpose of waiver hearings.

Michael argues that due process requires the juvenile court be notified of exculpatory evidence in some manner. Iowa Code section 232.45(5) accords the same right to the juvenile to present "all relevant and material evidence" consonant with due process as it does the State. *See State v. Wright,* 456 N.W.2d 661, 665 (Iowa 1990). To claim the waiver report was slanted in favor of the State, thus denying Michael his due process right to a fair hearing, is to overlook the circumstances and procedure of the waiver hearing. The exculpatory evidence Michael claims the juvenile court should have been made aware of was also known by Michael, namely the threats and physical assault Jeremy made on Michael. Some of that information, although scant, was included in the waiver report which was presented to the juvenile court. Michael had the right and opportunity to testify and raise his defense of justification. He could have called his own witnesses to support his position as there were many of his friends present at the time leading up to and including the shooting. Having failed to take timely advantage of the opportunity to expand on his justification defense, we find no merit to Michael's claim that his due process rights were violated at the waiver hearing. Michael raises no other challenge to the waiver hearing. We find the juvenile court did not abuse its discretion in waiving jurisdiction to district court.

■ *Justification defense.* Michael next argues the trial court erred in failing to grant his motions for judgment of acquittal as he claims the State failed to establish he acted without justification. Our standard of review is substantial evidence when the denial of a motion for judgment of acquittal is based on the alleged insufficiency of the evidence. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). The evidence is considered in a light most favorable to the State. *State v. La Pointe,* 418 N.W.2d 49, 51 (Iowa 1988). We must consider all of the evidence and not just the evidence which supports the verdict. *State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984). Provided the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion or conjecture," direct and circumstantial evidence are equally probative. *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981).

The burden rests with the State to prove, beyond a reasonable doubt, justification did not exist. *State v. Mayes,* 286 N.W.2d 387, 392 (Iowa 1979). The State can meet its burden by proving any *one* of the following:

1. The defendant started or continued the incident which resulted in death; or

2. An alternative course of action was available to the defendant; or

3. The defendant did not believe he was in immediate danger of death or injury and the use of force was not necessary to save himself; or

4. The defendant did not have reasonable grounds for the belief; or

5. The force used by the defendant was unreasonable.

*Mayes,* 286 N.W.2d at 392–93; *State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993).

It is undisputed that an increased animosity developed between Michael and Jeremy, evidenced by frequent verbal threats, beginning the weekend before the shooting. Angela Grimes, who monitored a call Jeremy made to Michael on Saturday evening, testified that Michael said to Jeremy, "I'll shoot you." No other threats were made during that call.

On Monday morning, two days after the phone conversation, Michael took a loaded

.22 caliber revolver to school. The jury could have reasonably concluded both the threat to shoot Jeremy and bringing the loaded gun to school, "started or continued the incident." *Mayes*, 286 N.W.2d at 392. During the day Michael showed the gun to several students and indicated he would shoot Jeremy if Jeremy "messed" with him. The tension further escalated in their driver's education class. Witnesses testified Jeremy grabbed Michael and asked to see his gun. Michael reportedly asked Jeremy on which side of the head he wanted to be shot. Several witnesses said Jeremy grabbed Michael and told him, "you're dead after class." After class, Jeremy followed Michael into the hallway and repeatedly pushed him against the wall and kept asking him where the gun was. Numerous witnesses testified Michael was the one who suggested they "take it outside," where the shooting occurred. Michael told one witness earlier this was his ultimate plan.

Most striking was the manner in which Michael actually shot Jeremy. Michael waited for Jeremy to emerge from the school building. He did not flee which would have been "an alternative course of action." *Mayes*, 286 N.W.2d at 392. Michael testified that he heard the door open and Jeremy yell, "Michael, I've got something for you." No one who heard this claimed to hear any reference to a gun. After hearing his name called by Jeremy, Michael simply turned and shot Jeremy, once, then again. There was no testimony that he hesitated. The jury could have reasonably concluded Michael did not have reasonable grounds for the belief he was in immediate danger and the force used was unreasonable. *Mayes*, 286 N.W.2d at 392. We find there is substantial evidence supporting the State's burden of proving more than one of the factors refuting justification.

■ *Jury instruction.* Michael's final challenge is to the trial court's refusal to instruct the jury that brass knuckles are a dangerous weapon. He theorizes malice may be inferred from a person's use of a dangerous weapon and the issue of Jeremy's malice was important to the question of provocation. Michael argues the requested instruction would have established his use of a firearm

was in resistance "to a like force or threat by a dangerous weapon" and would have bolstered his justification defense. Our review is for errors at law. Iowa R.App.P. 4; *State v. Babers*, 514 N.W.2d 79, 82–83 (Iowa 1994).

Several witnesses' testimony corroborated that the brass knuckles were in decedent's pocket prior to, during, and after the shooting. The record is bereft of evidence indicating Michael saw the brass knuckles or that he was aware Jeremy had the brass knuckles in his pocket, although he did testify he saw a bulge in Jeremy's pocket during class. The court proposed the following two jury instructions concerning "dangerous weapons":

A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device which is actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Jury Instr. No. 18; App. 758.

If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation and specific intent to kill.

You are instructed that a pistol or revolver is, by law, a firearm and a dangerous weapon.

Jury Instr. No. 19; App. 758.

Michael requested Instruction No. 18 be supplemented with, "Brass knuckles are dangerous weapons." He requested Instruction No. 19 be supplemented with, "You are instructed that brass knuckles are by law a dangerous weapon."

The brass knuckles (as "dangerous weapons") would be relevant to a justification defense if a person justifiably and reasonably believes that such force is necessary to defend himself from any imminent use of unlawful force. Iowa Code section 704.3 (1997). The Code defines "reasonable force" as:

that force and no more which a reasonable person, in like circumstances, would

judge to be necessary to prevent an injury or loss ... and can include deadly force *if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety ... or it is reasonable to believe that such force is necessary to resist a like force or threat.*

Iowa Code § 704.1 (1997). (Emphasis added.)

The record does not reflect any facts or circumstances warranting the inclusion of Michael's proposed supplements to the jury instructions. The mere existence of the brass knuckles does not factor into Michael's reasonable fears nor does it substantiate his justification defense as he was not even aware Jeremy had brass knuckles in his pocket at the time of the shooting. We therefore find the district court did not err in refusing to instruct the jury that brass knuckles are a "dangerous weapon."

Having considered all the issues on appeal, we hereby affirm.

**AFFIRMED.**