## IN THE COURT OF APPEALS OF IOWA

No. 14-1717
Filed April 27, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TAJH ROSS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Patrick R. Grady (motion to withdraw) and Robert E. Sosalla (trial), Judges.

Tajh Ross appeals his convictions for murder in the first degree, intimidation with a dangerous weapon, and going armed with intent.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle and Tabor, JJ.

**VOGEL, Presiding Judge.**

Tajh Ross appeals his convictions for murder in the first degree, intimidation with a dangerous weapon, and going armed with intent. He asserts the district court erred when it denied defense counsel's motions to withdraw; furthermore, by denying his request to proceed pro se, Ross claims the court violated his Sixth Amendment right to represent himself. He also claims insufficient evidence supports his conviction for murder in the first degree and that he proved the defense of justification.

We conclude the district court properly denied the motions to withdraw and proceed pro se because no valid waiver of Ross's right to counsel took place; furthermore, the court did not abuse its discretion when it denied defense counsel's motions to withdraw. Additionally, sufficient evidence supports the first-degree murder conviction, and Ross did not establish facts showing a defense of justification was warranted. Consequently, we affirm Ross's convictions.

**I. Factual and Procedural Background**

At approximately 9:30 p.m. on September 22, 2012, Haley McConnell, Neil Clark, and Latasha Roundtree were going to a party in Cedar Rapids. McConnell was driving, Roundtree was sitting in the passenger's seat, and Clark was sitting in the back. The address of the house was 649 16th Avenue SW. The streets were not well lit, and being unable to locate the residence, they drove around the neighborhood slowly at approximately five to ten miles per hour.

After driving past the house at 649 16th Avenue SW, the passenger window shattered, and Roundtree fell over, having suffered a gunshot wound to

the head. After Roundtree was shot, McConnell sped away and heard gunshots as she drove further down the street. Clark urged McConnell to drive to a local hospital, and following emergency treatment there, Roundtree was transported to University Hospitals in Iowa City but died shortly thereafter.

The house located at 649 16th Avenue has two rental units, one upstairs and one downstairs.[1] Amber Houston and her cousins, Jeremiah Ellis and Frederick Hanson, lived in the downstairs unit. Earlier in the day on September 22, Ellis's girlfriend, Alleigha Church-Greene, informed Ellis she had heard of plans that Davonte Safforld intended to "shoot up" Ellis's residence. The district court noted, "There was bad blood between Ellis and Safforld for reasons unexplored in the testimony." It was agreed the threat was not serious, and the party was not cancelled.

Those invited to the party were Liban Muhidin (Liban), Yasin Muhidin (Yasin), Adrian Kenney, Alexus Omar, Church-Greene, and Ross. All had arrived at the residence by approximately 9:00 p.m. Shortly thereafter, Ellis and Hanson began discussing the threat posed by Safforld, and everyone at the house became aware of it. Yasin and Kenney then left so Yasin could change clothes. The others were gathered outside the residence.

A green car passed by the house, which the parties believed could contain Safforld because Safforld's girlfriend drove a green vehicle. Ellis went to the corner and watched it drive away. Meanwhile, Liban called Yasin and told him to retrieve Liban's guns from his residence. Yasin returned with an AK-47 and a .40 caliber handgun in the trunk of Liban's car. Liban placed the AK-47 in an empty

---

[1] The second unit bore the address of 651 16th Avenue SW.

trashcan across the street, while Yasin and Ross argued over who should hold the handgun. Ross took the handgun, telling Yasin he was too little to operate it. Ellis was also armed with his own .22 caliber handgun.

After the guns were distributed and most of the group had crossed the street to an abandoned house, the parties observed McConnell's car (a white vehicle) drive slowly past. Ellis raised his handgun but was prevented by Yasin from firing. The second time the car approached the house, Liban ran across the street to the 649 residence so the vehicle would decrease its speed. After Liban reached the property, Ross cycled the gun, told Liban to "look out," and fired the gun in the direction of the vehicle. Ellis ran into the street and fired five shots at the vehicle, and Ross ran down the alley, firing six more times at the car. The bullet that killed Roundtree was later matched to the .40 caliber handgun Ross had used.

Ross was arrested on February 27, 2013. He was charged with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2(1) (2011), intimidation with a dangerous weapon, in violation of Iowa Code section 708.6, conspiracy to commit a forcible felony, in violation of Iowa Code sections 706.1, 706.3, and 708.6, and going armed with intent, in violation of Iowa Code section 708.8. He pled not guilty, and trial on the matter was set.

On June 7, 2013, defense counsel, Douglas Q. Davis II from the Linn County Public Defender, moved to withdraw, citing a breakdown in the attorney-client relationship.[2] A hearing was held on June 28, 2013. The hearing began

---

[2] Ross also filed several pro se motions and sent the district court letters. Among other statements, Ross indicated his dissatisfaction with trial counsel and requested he be

with defense counsel explaining the lack of communication with his client and the need for him to withdraw from representation. The district court then attempted to engage Ross in a colloquy showing he understood the rights he was relinquishing by proceeding pro se; however, Ross did not answer the questions, cited the Uniform Commercial Code, and responded to most questions by saying "rights to notice." After several attempts to engage Ross, the district court stated:

> Given the defendant's total lack of cooperation with Mr. Davis and with the court, he has shown he is not competent to represent himself in these proceedings, that he is refusing to recognize the position of the court and the court's desire to recognize and give him the opportunity to assert his rights. He is not doing so. Therefore, he is not adequately waiving his right to counsel.

In a written ruling, the district court denied the motion without prejudice, finding Ross could not represent himself unless he engaged in the colloquy.

Counsel moved to withdraw again and further requested a competency evaluation. Another hearing was held on the motion to withdraw, and though Ross answered some questions posed by the district court, when asked if he understood the charges against him, he responded that he did not. He then attempted to challenge the district court's jurisdiction, and when asked to explain his arguments, Ross stated:

> I am not here to cause any controversy or any conflict. I am here to challenge subject matter jurisdiction. I am prepared generally and not generally and I object to your reference to me as the Defendant or Tajh Ross. I am not a corporation. I'm the sole reflection of blood, born sovereign and free to a God-promised land. In agreement with this court hearing, you are not working with clean hands and you are acting in bad faith and not with authority of your

---

allowed to proceed pro se. His last letter to the court was dated February 14, 2014, in which he declared himself a "sovereign flesh and blood human being" and stated he would not contract with the State or the county and he had not "joined in the above captioned suit"; however, he made no request to proceed pro se in that letter.

office and also representation/counsel appointed, violating my rights to proceed as a jurist as desired. I also want you to acknowledge that you are acting outside the bench of threats to end this court hearing and not allow me to object. I am guaranteed rights and I am guaranteed to be heard in court, Your Honor. With all due respect, sir, am I to understand that you are impersonating a judge?

The court issued a second written order denying Ross's motion to proceed pro se, finding he failed to "show a knowing, intelligent, and voluntary waiver of his right to be represented by counsel." It further ordered that a competency evaluation be completed, which was done the following February. During the evaluation, Ross stated he understood his attorney's job was to protect him and that defense counsel was "on his side"; subsequently, he was found to be competent to stand trial. Although a third motion to withdraw was filed, it was never ruled on. A bench trial was held on August 8, 2014, in which Ross was represented by two defense attorneys. The court subsequently found Ross guilty on all counts except for the charge of conspiracy to commit a forcible felony. Ross appeals.

## II. Standard of Review

We review rulings on a motion to proceed pro se, which implicates constitutional rights, de novo. *State v. Spencer*, 519 N.W.2d 357, 359 (Iowa 1994). Our review of an order regarding defense counsel's motion to withdraw is for an abuse of discretion. *State v. Lopez*, 633 N.W.2d 774, 778 (Iowa 2001). We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005).

**III. Motions to Withdraw and Proceed Pro Se**

Ross first claims the district court erred in denying defense counsel's motions to withdraw. He further asserts the court violated his constitutional right to self-representation by failing to allow him to proceed pro se.

A criminal defendant has a Sixth Amendment right to represent himself; however, the waiver of his right to court-appointed counsel must be knowing and intelligent. *Faretta v. California*, 422 U.S. 806, 819–20 (1975). "The defendant's request to proceed without counsel must be clear and unequivocal" and courts must "indulge every reasonable presumption against waiver of" the defendant's right to counsel. *State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000) (citation omitted). In the context of the Sixth Amendment, the defendant must understand the rights he is giving up and unequivocally request he be allowed to proceed pro se. *See Bilauski v. Steele*, 754 F.3d 519, 523 (8th Cir. 2014).

The district court began its attempted colloquy with Ross in the first motion-to-withdraw hearing by stating, "[t]here's a number of questions that I'm required to take you through and some that I'm going to add in as well, given the serious nature of the charges against you and the complicated nature of the case against you." On appeal, Ross claims the court failed to engage in a meaningful colloquy as to whether Ross's request to waive his right to counsel and proceed pro se was knowing and voluntary. However, during both hearings, Ross failed to respond to the majority of the court's questions; the very questions that were designed to ensure Ross's waiver of his right to counsel was knowing and voluntary. Though the court informed Ross he would only be allowed to

represent himself if he engaged in the colloquy, Ross continually refused to give any meaningful answers.

Moreover, Ross did not establish he understood the proceedings such that he was voluntarily exercising his informed free will. *See Faretta*, 422 U.S. at 835 ("The record affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will."); *see also Indiana v. Edwards*, 554 U.S. 156, 175–76 (2008) (noting the defendant's competency to proceed pro se versus his competency to stand trial are different, inasmuch as a defendant may be competent to assist in his own defense but may nonetheless be "unable to carry out the basic tasks needed to present his own defense without the help of counsel").

As the Supreme Court has noted in the context of a defendant's waiver of counsel:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948); *see also State v. Rater*, 568 N.W.2d 655, 662 (Iowa 1997) (holding that, because the district court failed to conduct an in-depth colloquy to ensure the defendant's waiver of his right to counsel was knowing and voluntary, his Sixth Amendment right to representation was violated).

When asked if he understood the nature of the charges against him, Ross proceeded to make disjointed and rambling statements, demonstrating he did not understand the underlying legal proceedings or what he was required to do so as

to be able to represent himself. Consequently, we agree with the court's conclusion Ross's waiver of his right to counsel was not knowing and voluntary, as no valid waiver occurred. *See Martin*, 608 N.W.2d at 450; *see also Raulerson v. Wainwright*, 732 F.2d 803, 808–09 (11th Cir. 1984) (holding that, because the defendant did not unequivocally waive his right to counsel, the district court properly denied his motion to proceed pro se); *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015) (holding the defendant forfeited his right to proceed pro se after failing to object to counsel's continued representation of him).

Furthermore, the district court did not abuse its discretion when it denied defense counsel's motion to withdraw.[3] Ross indicated multiple times that he did not want any counsel, leading the district court to conclude Ross "would not accept a substitute lawyer." Prior to trial, an additional defense attorney—Todd B. Weimer, also from the Linn County Public Defender's office—was appointed to represent Ross. Then, when it became apparent there could be a potential conflict of interest because Weimer had represented Ellis in the past, Ross signed a waiver-of-conflicts form. In that waiver Ross stated, "I want Todd B. Weimer to represent me in this case." In not substituting original defense counsel but appointing additional co-counsel with Ross's consent, as well as engaging in a detailed colloquy with Ross as to Weimer's representation, we find no abuse of discretion. *See Lopez*, 633 N.W.2d at 780–81. Therefore, we conclude no constitutional rights were violated, and the court properly denied

---

[3] Counsel's third motion to withdraw, filed on September 5, 2013, was never specifically ruled on; however, at the hearing following the competency evaluation on February 25, 2014, counsel did not raise the issue, and a trial date was set. Counsel continued to work on the case and did not reassert his request to withdraw at any point after the September 5 motion.

Ross's motions. *See Spencer*, 519 N.W.2d at 360 (holding that, because the defendant did not reassert his request to proceed pro se following his initial request, "he waived and abandoned that right by acquiescing to [defense counsel's] full representation of his case").

## IV. Sufficiency of the Evidence

Ross further challenges the sufficiency of the evidence with regard to the first-degree murder conviction. He asserts the court improperly found that he acted willfully, deliberately, with premeditation, and with malice aforethought, as the shooting was accidental. Additionally, he claims there was insufficient evidence to counter his defense of justification; therefore, he asserts the district court erred by adjudging him guilty.

With regard to sufficiency claims, we view the record in the light most favorable to the State and make all legitimate inferences and presumptions that may be reasonably deduced from the evidence. *Quinn*, 691 N.W.2d at 407. If substantial evidence supports the verdict, we will affirm. *Id.* Evidence is substantial if it would convince a reasonable trier of fact the defendant is guilty beyond a reasonable doubt. *Id.*

### A. Malice aforethought

To be guilty of first-degree murder, the defendant must kill the victim with malice aforethought, as well as willfully, deliberately, and with premeditation. Iowa Code §§ 707.1, 707.2. "Malice aforethought is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time." *State v. Bentley*, 757 N.W.2d 257, 265 (Iowa 2008) (citation omitted).

In its order, the district court concluded:

This series of events involved a number of deliberate acts that Ross undertook. First, he decided to cross 16th Avenue from a place of relative safety to a place of perceived relative danger. Second, he positioned himself in an area out of view of the oncoming white car. Third, he cycled his firearm, making sure it was ready to fire. Fourth, he took deliberate aim at the car. Fifth, he had the presence of mind to be sure his friend was out of the way. Sixth, he squeezed off a round from his gun while it was aimed at the car. Each of those decisions required some deliberation on his part. Each reflects the presence of malice aforethought and premeditation. Finally, Ross took each of these actions intentionally, with a fixed purpose, and not accidentally . . . . Ross chose to stand and fight the evening of September 22, 2012. As a consequence of that decision he killed Roundtree with malice aforethought, willfully, deliberately, premeditatedly, and with a specific intent to kill.

The evidence supports the court's conclusions. Ross and the others were aware of a potential threat, and when they saw the first car—a green vehicle—drive past, they armed themselves in response. Ross retained control over the .40 caliber handgun, following an argument between him and Yasin over who was going to use it. Then, when McConnell's white car drove past the house, Ross proceeded to cycle his gun and fire at the car a number of times. Viewing the evidence in the light most favorable to the State, and making all legitimate inferences in favor thereof, this did not amount to an accidental shooting. *See Quinn*, 691 N.W.2d at 407. Thus, we agree with the district court Ross's actions the night of September 22 indicate he acted willfully, deliberately, with premeditation, and with malice aforethought, therefore satisfying the elements of murder in the first degree. *See Bentley*, 757 N.W.2d at 265.

**B. Justification**

A defendant is justified in using force when he is in reasonable fear of imminent death or injury. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). For the State to establish there was no justification, it must show beyond a reasonable doubt (1) the defendant started or continued the incident which resulted in death, (2) an alternative course of action was available, (3) the defendant did not believe he was in immediate danger of death or injury and the use of force was not necessary to save him, (4) he did not have reasonable grounds for the belief, or (5) the force used was unreasonable. *Id.*; *see also State v. Mayes*, 286 N.W.2d 387, 392 (Iowa 1979).

In its order, the district court noted:

> First, the evidence is clear that Ross started the incident that resulted in Roundtree's death. To be clear, the incident that resulted in her death started when Ross fired the Smith and Wesson .40 caliber handgun at the front passenger seat of the white car. Prior to that, no one in the white car had done anything remotely resembling or suggesting the imminent use of unlawful force against Ross or anyone else present at 649 16th Avenue SW.
> . . . .
> Further, it is clear from the evidence that Ross had alternative courses of action available to him to avoid any danger. And he had ample opportunity to elect an alternative course of action. He could have simply walked away from the area after the white car went past the first time and was thought to be a threat. He could have called the police. He could have sought shelter in a public area. Instead, Ross elected to stay and fight an unknown entity.
> Ross maintains he believed he and Liban were in imminent danger of death or injury. He based this belief on his imagined threat of the white car. For reasons previously listed, the evidence shows that this belief simply was not reasonable. It existed only in his imagination and the imagination of others at 649.
> Finally, Ross's use of deadly force under the circumstances was not reasonable. All he can point to as a reason for firing is he saw the back passenger side window start to go down before he

shot.  He saw no weapon.  He saw no person.  And he fired at the front passenger whose window remained up.

We agree with the court's ruling that Ross was not in imminent danger and the defense of justification was not available to him.  The people in the white car in no way indicated they posed a threat to Ross or the other members of the group, considering no weapons were brandished or any other threatening behavior was involved.  Furthermore, Ross was the one who opened fire on the car, without any indication that it posed a danger, demonstrating his use of force was unreasonable and there were alternative courses of action available.  Therefore, the State established the defense of justification was not available to Ross such that he should not be held criminally liable for Roundtree's death.  *See Mayes*, 286 N.W.2d at 392.

For these reasons, we affirm Ross's convictions and sentence.

**AFFIRMED.**