# IN THE COURT OF APPEALS OF IOWA

No. 21-1624
Filed October 19, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MILTON SERRANO JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cedar County, Mark R. Lawson,

Judge.

        A defendant appeals his conviction for second-degree murder, challenging

there was a lack of sufficient evidence. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

A farm party turned fight led to the death of Chantz Stevens in July 2020. Milton Serrano Jr. was charged and convicted of second-degree murder. At trial, he argued he was acting in self-defense when he stabbed Stevens twice in the abdomen, and on appeal he argues the State both failed to prove he acted with malice aforethought or that he was not justified in using reasonable force. Because we find substantial evidence supports the jury's finding that Serrano acted with malice aforethought and without justification, we affirm the conviction.

**I. Background Facts and Proceedings.**

In the summer of 2020, R.K. invited a group of friends to his parents' farm outside of Tipton, Iowa to celebrate the end of the school year. The farm was fairly isolated and the party was happening at the end of a long driveway; the nearest gas station or town was nearly five miles away. R.K. only invited ten or twelve people, but witnesses reported that before the night was over there was anywhere from fifty to one hundred guests ranging from high-school to college aged. Though he did not know many people at the party, Serrano was among the crowd. Serrano did not drive himself to the party, but arrived around 9:00 p.m. with a carload of people—his ride left at 11:30 to make a 12:30 a.m. curfew but Serrano stayed at the party. One partygoer reported Serrano was loudly informing others that he was "strapped," which they assumed meant he had a weapon with him. As the night went on, Serrano sold cocaine to some others at the party; some imbibers snorted the drug off the trunk of a car. Serrano was later accused of carving his social media username into that same car with a pocket knife. The car's owner

testified that his car had cocaine on the trunk and Serrano's "username" scratched into the paint twice.

At this point, people began asking Serrano to leave. Serrano argued he had done nothing to the car. As the issue persisted, he got into a fistfight with one of the accusers that lasted only a few minutes. During the fight, some bystanders gathered around to cheer and egg on the spectacle, while others called for the fighting to stop. No other person engaged in the fight. Serrano, by all accounts, lost that fight and was left with a cut on his brow and a dislocated shoulder. The crowd was still yelling at Serrano to leave, yet Serrano refused and said he would "fight anyone." R.K. helped Serrano pop his shoulder back into place and told Serrano to leave again; Serrano refused. With no movement by Serrano to leave, a line of bodies began to assemble with a crowd behind it, moving closer to usher Serrano down the driveway toward the main road; the line did not touch Serrano. From that line, Chantz Stevens and R.K.—among others—were again telling Serrano to leave. Eventually, as Serrano stopped backing up and instead walked closer to the line and in the direction of the party, Stevens tackled Serrano—the two fought for less than a minute.[1] Stevens never displayed a weapon, and it started as a fist fight. Witnesses described the fight as far more evenly matched than the first fight. In the midst of the fight, Serrano pulled out his pocket knife and stabbed Stevens twice in the abdomen. It became clear Stevens was losing blood and people started pulling the two young men apart. The fight was broken up, and Serrano ran down the driveway.

---

[1] Videos of both fights were entered as evidence at trial.

Now with a person seriously injured, Cedar County police received a call at 2:12 a.m. that there had been a stabbing at a rural party; when they arrived, they failed to find Stevens's pulse.[2] Two of the teenagers showed officers the videos Serrano was posting on his social media account, which also showed Serrano's location.

Meanwhile, Serrano flagged down a car; covered in blood and with the knife in his hand, he asked the driver to take him to a fast-food restaurant in Muscatine. Serrano told the driver he had keyed a car and stabbed someone; he also posted videos on his social media about the incident while riding in the car. After being dropped off at the restaurant, he took a pillow, a water bottle, and a T-shirt from the car and threw them in the dumpster. Then, while waiting for a friend—Xena Guerreo—to pick him up, Serrano continued to post videos saying "ain't my blood." In another, he said, "[T]wo, three people [were] jumping on me, I reached in my pocket, grabbed out my knife, and I started stabbing." Guerreo picked Serrano up and took him back to her home. She used baby wipes to help clean Serrano up; afterward, Serrano showered and his clothes went in the washing machine.

Police officers were given Serrano's social media username and were advised of Serrano's location at Guerreo's home. With that information, they obtained search warrants for his social media account and Guerreo's residence. They collected Serrano's clothing and shoes, as well as the materials used to clean the blood off of him. Officers also retrieved video from the restaurant of Serrano

---

[2] The State Medical Examiner examined the body and found Stevens's heart and diaphragm had been struck—each wound was potentially fatal. The death was ruled a homicide.

throwing items in a dumpster. They procured from the dumpster the pillow, water bottle, and shirt he had removed from the car after fleeing the fight; the pillow and shirt had bloodstains on them. The bloodied items gathered from the home and the restaurant were tested and the T-shirt and pillow from the dumpster, as well as the wipes collected from Guerreo's home, had DNA on them consistent with Serrano and Stevens. The shoes collected from Guerreo's home and Stevens's shirt also had Stevens's DNA on them.

To continue the investigation, Serrano was questioned by detectives, and he told them he had been "jumped" at the party. He explained he had been wrongly accused of scratching a car and was then beat up. He described blacking out—the last thing he remembered was running down the drive and getting in a car. He did not know the names of the people who were on top of him but described it as two or three guys. Serrano eventually admitted that when the men jumped on him, he pulled out his knife to defend himself and started stabbing; he described being scared and feeling he had no other choice, and he consistently maintained he was acting to defend himself.

Serrano was tried for first-degree murder; the jury was also instructed on second-degree murder and voluntary and involuntary manslaughter. Nearly twenty individuals who were at the party testified about what they saw that night. After the State rested, Serrano moved for judgment of acquittal, arguing in part the State had not proved he stabbed Stevens with malice aforethought or without justification. He argued he was acting in self-defense. The motion was denied. After not offering any evidence, Serrano rested, but the motion was renewed and

once more denied.  Serrano was found guilty of second-degree murder.[3]  He now appeals.

## II. Analysis.

On appeal, Serrano asserts the State provided insufficient evidence to prove he stabbed Stevens with malice aforethought or without justification.  We review sufficiency-of-the-evidence questions for correction of errors at law.  *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022).  "We are highly deferential to the jury's verdict," which we are bound by as long as "the verdict is supported by substantial evidence."  *Id.*  "Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt."  *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996).  In this review, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'"  *Crawford*, 972 N.W.2d at 202 (citation omitted).

---

[3] When a jury instruction is unchallenged, it becomes the law of the case whether right or wrong.  *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988).  The jury instructions explained:

> 1. On or about the 19th day of July, 2020, [Serrano] stabbed Chantz Stevens.
> 2. Chantz Stevens died as a result of being stabbed.
> 3. [Serrano] acted with malice aforethought.
> 4. [Serrano] acted without justification.
> If the State has proved all of the elements, [Serrano] is guilty of Murder in the Second Degree.  If the State has failed to prove any one of the elements, [Serrano] is not guilty of Murder in the Second Degree . . . .
> Murder in the Second Degree does not require a specific intent to kill another person.

A. Malice Aforethought.

"Malice aforethought is . . . an essential element of second-degree murder and is an element that separates second-degree murder from other lesser included offenses." *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). It is "a fixed purpose or design to do some physical harm to another that exists before the act is committed" and "does not have to exist for any particular length of time." *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003) (citations omitted). There is a permissive presumption of malice aforethought when the defendant uses a dangerous weapon; but this presumption can be rebutted if there is evidence "the killing was accidental, under provocation, or because of mental incapacity."[4] *Reeves*, 670 N.W.2d at 207.

Serrano contends the State failed to show he acted with malice aforethought because there was no evidence of historic animosity between he and Stevens; because Stevens attacked Serrano, eliminating any time to deliberate;[5] and because there was no evidence Serrano was carrying the knife with the intent to harm anyone. He also disputes that the knife was a dangerous weapon.

That said, the jury was instructed that "[a] 'dangerous weapon' . . . is any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used, is capable of inflicting

---

[4] Serrano makes no argument about the stabbing being accidental or a consequence of his mental capacity. As his provocation argument overlaps with his justification argument, we address it in the next section.

[5] Insofar as Serrano is arguing the State failed to prove deliberation, this is an element of first-degree murder rather than second-degree murder. *See State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001); *compare* Iowa Code §§ 707.2(1)(a) and 707.3(1).

death." Here, a reasonable jury could find the knife Serrano used fit that bill and that stabbing Stevens in the abdomen showed Serrano intended to inflict death or serious injury. Therefore, the jury could apply the presumption of malice aforethought in this situation, meaning other indicators of malice aforethought such as historic animosity or Serrano's purpose in carrying the knife that night would be irrelevant. *See State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) ("[I]t is often impossible for a jury to determine a defendant's state of mind without the aid of inference. By instructing the jury that it may infer malice from the use of a dangerous weapon, courts present the jury with a straightforward example of how the State might prove the defendant's culpable state of mind. The inference, which the jury is permitted but never required to make, exists because a rational juror could infer that one who uses a dangerous weapon intends to cause physical harm, and even to kill." (internal citations omitted)). So a reasonable jury could find the presumption of malice aforethought applied in this situation.

B. Justification.

"Under Iowa law, a person is justified in the use of reasonable force, including deadly force, if that person reasonably believes the force used was necessary to defend himself or another from any imminent use of unlawful force." *State v. Fordyce*, 940 N.W.2d 419, 422 (Iowa 2020).

As to reasonable force, the jury was instructed:

> [Serrano] was justified in using reasonable force if he reasonably believed that such force was necessary to defend himself or another from any actual or imminent use of unlawful force.
> Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury. If in [Serrano's] mind the danger was actual, real, imminent, or unavoidable, even if [Serrano] was wrong in

estimating it or the force necessary to repel it, the force was justified if [Serrano] had a reasonable basis for his belief and responded reasonably to that belief. It is not necessary that there was actual danger, but [Serrano] must have acted in an honest and sincere belief that the danger actually existed. Apparent danger with [Serrano's] knowledge that no real danger existed is no excuse for using force.

Reasonable force can include deadly forced if it is reasonable to believe that such force is necessary to resist a like force or threat, or avoid injury or risk to one's life or safety or the life or safety of another.

The State must prove beyond a reasonable doubt that [Serrano] use of force was not justified.

The jury was also informed "[a] defendant who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as described in these instructions."

Serrano argues the State failed to disprove his justification defense as the evidence established he had been attacked and had a reasonable belief that the force he used was reasonable and necessary to prevent the force used against him. *See Fordyce*, 940 N.W.2d at 426 ("When self-defense is raised, the burden rests with the State to prove beyond a reasonable doubt that the justification did not exist."). Still, this tells only half of the story. A reasonable juror could find, from the evidence presented from multiple eye witnesses, that Serrano made statements he was not done fighting and encouraged another altercation, continuing the violence overall and inciting the fight with Stevens. *See id.* ("The State can meet its burden [to prove justification did not exist] by proving . . . [t]he [d]efendant started or continued the incident which resulted in death."); *see also State v. Coffman*, 562 N.W.2d 766, 769 (Iowa 1997) (using threats or escalations, rather than only physical movements, to show the defendant started or continued the incident). Further, Serrano not only tried to hide the evidence of the fight—

including the bloodstained items from the car, the knife, and his own clothing—but also first lied to officers about his involvement with the party and fight.[6] *See State v. Van Hemert*, No. 19-1273, 2020 WL 5944441, at *4 (Iowa Ct. App. Oct. 7, 2020) (noting jurors could believe that someone who truly believed they acted in self-defense would not hide evidence or lie to authorities); *see also Fordyce*, 940 N.W.2d at 426 (providing the State can prove the defendant did not act in self-defense if "[t]he [d]efendant did not believe he was in immediate danger of death or injury and the use of force was not necessary to save himself").  Either of these alternatives would allow the jury to find Serrano was not justified in his use of force.

**III. Conclusion.**

Because substantial evidence supports the jury's findings that Serrano acted with malice aforethought and without justification, we affirm the conviction.

**AFFIRMED.**

---

[6] The jury was instructed that "[a]fter using deadly force," Serrano had the duty "[t]o not intentionally destroy, alter, conceal, or disguise physical evidence relating to [his] use of deadly force. . . .  You may consider whether the defendant complied with [this duty] when deciding whether deadly force was justified."