**STATE of Iowa, Appellee,**

v.

**Gabriel Anthony RUBINO, Appellant.**

**No. 98–251.**

Supreme Court of Iowa.

Nov. 17, 1999.

Susan R. Stockdale of Roehrick, Hulting, Krull & Blumberg, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and D. Raymond Walton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

We granted further review to consider the State's challenge to a court of appeals decision which reversed defendant's conviction for first-degree burglary because of counsel's failure to appear and advocate on his behalf at a "reverse waiver" hearing. *See* Iowa Code §§ 803.6, 232.8 (1995) (granting district court jurisdiction over juveniles sixteen years or older charged with committing a forcible felony and authorizing transfer to juvenile court in appropriate cases). We agree—and the State concedes—that the defendant, who was just days shy of his eighteenth birthday when arrested, is entitled to a new hearing on the question of whether he should have been tried as a juvenile rather than as an adult. Pending the outcome of that hearing, however, we find no error sufficient to upset the trial already held. We therefore vacate the decision of the court of appeals, reverse the district court in part and conditionally affirm defendant's conviction subject to the possibility of a new trial depending on the outcome of the transfer hearing following remand.

## I. Background Facts and Proceedings.

A. *Facts.* On the evening of December 6, 1996, two groups of teenagers skirmished outside the home of Tracey Nei-

man in Waterloo, Iowa. The evident focus of their quarrel was Vicki Zan. She was spending the evening with Neiman and his friends, to the chagrin of buddies loyal to another suitor, Jeremy Stanford. Fueled by alcohol, the two camps engaged in name-calling by phone and during two "drive-bys." Stanford's friends threw forty ounce beer bottles at the house; one of Neiman's companions appeared on the porch waving a gun to scare off the intruders.

The quarrel escalated when Stanford's buddies returned with defendant, Gabriel Rubino. They anticipated a fight on the lawn but as soon as they stepped from the car one of them was struck by a bullet fired from the house. Instead of running away, Rubino and the others "stormed" Neiman's house, breaking down the locked front door and assaulting several of the occupants. Injuries were inflicted. Rubino was positively identified as one of the assailants.

B. *Criminal proceedings.* The State charged Rubino with first-degree burglary, a forcible felony. *See* Iowa Code §§ 713.1, 713.3, and 702.11 (defining burglary, first-degree burglary and forcible felony). At the time of his arrest, Rubino was not yet eighteen years of age. Because of the nature of the charge, Iowa Code sections 803.6 and 232.8 came into play. In short, those statutes "exempt certain classes of alleged juvenile offenders from the initial jurisdiction of the juvenile court." *State v. Terry,* 569 N.W.2d 364, 366 (Iowa 1997). The district court therefore assumed jurisdiction. *See id.*

Rubino's privately retained attorney, Dave Nagel, filed a "reverse waiver" motion to transfer jurisdiction to the juvenile court. *See id.* (juvenile within exempted class may be transferred from adult to juvenile court for "good cause"). The State resisted the transfer, and the court scheduled the matter for hearing. Neither Nagel nor the defendant appeared for the hearing. The matter was rescheduled. Nagel sought, and was granted, two additional continuances. Nagel appeared so late for the continued hearing that the court had already ruled adversely to the defendant based on failure to appear. Nagel prevailed in having the matter reheard at a later date but, prior to that date, sought yet another continuance because of a conflict with vacation plans. The district court denied the continuance and held the hearing without counsel or the defendant present. It likewise denied Rubino's request for transfer of jurisdiction to the juvenile court.

Nagel withdrew as counsel for Rubino, new counsel was appointed, and the case proceeded to trial. A jury found Rubino guilty as charged. Prior to sentencing, Rubino filed a motion to adjudicate law points. He raised the question whether, though convicted of a forcible felony, he might be eligible for deferred judgment as if he had been waived from juvenile court to district court. The district court ruled that section 232.8(1)(c) was fatal to Rubino's position. The statute states in pertinent part:

> A child over whom jurisdiction has not been transferred to the juvenile court, and who is convicted of a violation excluded from the jurisdiction of the juvenile court under this paragraph, shall be sentenced pursuant to section . . . 902.9.

Iowa Code § 232.8(1)(c). In accordance with section 902.9, the court sentenced Rubino to an indeterminate term not to exceed twenty-five years.

Rubino appealed. He claimed (1) his pretrial counsel was ineffective with respect to the motion to transfer jurisdiction to the juvenile court; (2) trial counsel was ineffective in several respects, including the failure to re-urge the reverse waiver motion; (3) the trial court erred by refusing to permit Rubino to fully impeach State witnesses with their plea agreements; and (4) the trial court erred in failing to direct the verdict in Rubino's favor on his defense of justification.

We transferred the appeal to the court of appeals. That court reversed defendant's conviction and remanded the case for a new hearing on his motion to transfer jurisdiction. Finding its remedy "obviates the need to consider the remaining issues raised on appeal," the court of appeals directed the district court to grant Rubino a new trial if his reverse waiver motion was denied on remand. We thereafter granted the State's petition for further review.

## II. Issues on Appeal.

■ A. *Scope of remand.* The State concedes, as it must, that Rubino's pretrial counsel inexcusably failed to appear and advocate on the motion to transfer jurisdiction, that Rubino suffered prejudice as a result, and that the case must be remanded for new hearing on that crucial stage of the proceedings. *See Kent v. United States,* 383 U.S. 541, 560–62, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97–98 (1966) (due process demands hearing and assistance of counsel at "critically important" juvenile waiver proceeding). The State contests, however, the court of appeals' further directive that, upon remand, if the court denies the transfer motion Rubino must be granted a new trial in district court. The State insists Nagel's ineffectiveness impacted only the waiver hearing, not the trial. The constitutional fairness of the trial was not affected, the State argues, because Nagel withdrew upon receiving the court's ruling and a new attorney—Robert Thompson—was appointed to represent Rubino at trial.

We agree that the automatic grant of a new trial would be premature at this juncture. The Supreme Court's reasoning in *Kent* is instructive on this point. As already noted, the court in *Kent* required scrupulous adherence to due process principles of hearing and right to counsel when a juvenile is confronted with an issue as crucial as waiver to adult court. To remedy the defect, Kent's counsel proposed dismissal of the indictment. The Court char-

acterized the proposal as unnecessarily "drastic" and, instead, merely remanded the case "for a hearing de novo on waiver" consistent with the due process principles set forth in the opinion. *Kent,* 383 U.S. at 565, 86 S.Ct. at 1059, 16 L.Ed.2d at 99. If the subsequent hearing revealed that the waiver order was proper when originally made, the Court ruled, then the trial court was authorized to "enter an appropriate judgment." *Id.; accord Black v. United States,* 355 F.2d 104, 107 (D.C.Cir.1965) (if juvenile appellant not waived on remand, then district court indictment must be dismissed; if appellant waived to district court, prejudice resulting from earlier invalid waiver must be determined and steps taken to correct it).

Here, the district court will be free on remand to consider anew those factors weighing for and against proceeding in juvenile court. *See* Iowa Code § 232.45(6)(c), (7). Under Iowa law, by contrast to the statutory scheme at issue in *Kent,* the potentially ameliorative benefits of juvenile court jurisdiction will still be available to Rubino. *Compare* Iowa Code § 232.8(1)(a) (juvenile court has jurisdiction in proceedings concerning an adult alleged to have committed a delinquent act prior to becoming an adult), *with Kent,* 383 U.S. at 564, 86 S.Ct. at 1059, 16 L.Ed.2d at 99 ("Petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him."). Only if the court, despite a record strengthened by the argument of counsel for Rubino, still finds district court jurisdiction appropriate, will Rubino's burglary conviction become an issue. Thus it is to the soundness of that conviction to which we now turn.

B. *Alleged ineffectiveness of trial counsel.* Rubino claims that his trial attorney, Thompson, provided ineffective assistance of counsel with respect to five distinct decisions: (1) failure to have Rubino testify in his own behalf in order to bolster his claim of justification with proof that he entered the apartment to prevent

the person inside from shooting anyone else; (2) failure to call all relevant witnesses to testify on Rubino's behalf; (3) failure to thoroughly impeach the State's witnesses with alleged inconsistent statements; (4) failure to renew the failed motion for reverse waiver; and (5) failure to challenge the constitutionality of a statutory scheme that demands a twenty-five year prison term for a juvenile convicted of first-degree burglary.

■ To prevail on a claim of ineffective assistance, a defendant must establish that counsel's performance fell outside the normal range of competency and so prejudiced the defendant that, but for counsel's errors, the result of the proceeding would have been different. *State v. Allison*, 576 N.W.2d 371, 373 (Iowa 1998). We review claims of ineffective assistance of counsel de novo. *State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999).

■ Ordinarily claims of ineffective assistance of counsel are preserved for postconviction relief. *Id.* That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues. *State v. Schoelerman*, 315 N.W.2d 67, 71 (Iowa 1982). Rubino's first four ineffectiveness claims fall into this category. On the other hand, where the record is adequate to address an issue, we may do so on direct appeal. *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994). Rubino's complaint that his trial counsel failed to challenge the constitutionality of a sentencing scheme that has resulted in his incarceration for up to twenty-five years falls within this latter category. We therefore turn to the merits of Rubino's fifth claim, preserving the others for possible postconviction litigation.

■ Rubino's counsel argued at trial that although his client had been prosecuted as an adult he should be treated as a juvenile for sentencing purposes. As explained earlier in this opinion, the court

rejected Rubino's contention based on the plain language of Iowa Code section 232.8(1)(c). Rubino now asserts on appeal that Thompson should have argued that a statutory scheme which prevents a trial court from exercising discretion when sentencing a juvenile convicted of first-degree burglary constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. We are permitted to reach the merits of the argument only because it is couched in terms of an ineffective-assistance-of-counsel claim, a recognized exception to our appellate preservation-of-error rules. *Earnest v. State*, 508 N.W.2d 630, 632 (Iowa 1993).

The crux of Rubino's claim is that the penalty imposed here is grossly disproportionate to the offense. He insists that a slight variation in the facts—a fight among the young men on the lawn instead of a brawl inside the apartment— would have resulted in no more than a charge for assault with injury, a serious misdemeanor carrying a maximum penalty of one year in jail and a $1500 fine. *See* Iowa Code §§ 708.1, 708.2, 903.1. But because Rubino "broke" a locked door and proceeded to assault the apartment's occupants, the crime has been elevated to first-degree burglary, with an additional twenty-four year penalty tacked on. *See* Iowa Code §§ 713.1, 713.3 (defining first-degree burglary as class "B" felony). This, Rubino claims, amounts to cruel and unusual punishment in violation of the Eighth Amendment.

■ The Eighth Amendment to the United States Constitution prohibits punishment that is "cruel and unusual," and is applicable to the states through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344–45, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59, 67–68 (1981); *State v. Lara*, 580 N.W.2d 783, 784 (Iowa 1998). Punishment that involves torture or other barbarism meets the test of "cruel and unusual," as would punishment "so excessively severe that it is disproportionate to the of-

fense charged." *Lara,* 580 N.W.2d at 785 (quoting *State v. Robbins,* 257 N.W.2d 63, 68 (Iowa 1977)). For years this court has been guided by a three-pronged test of disproportionality established by the United States Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Lara,* 580 N.W.2d at 785. The test called for an examination of the gravity of the offense in relation to the harshness of the penalty, a comparison of the sentence imposed relative to other crimes in the same jurisdiction, and a consideration of the severity of the sentence when compared to sentences imposed for similar crimes in other jurisdictions. *Id.* In *Lara,* however, we noted the Court's retreat from *Solem* in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *Id.* Under *Harmelin,* a proportionality analysis is appropriate only "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d at 871.

■ Mindful that courts afford substantial deference to legislatures in setting criminal penalties, we observed in *Lara* that only sentences characterized as extreme or grossly disproportionate may be said to violate the Eighth Amendment's prohibition. *Lara,* 580 N.W.2d at 785; *accord State v. Hoskins,* 586 N.W.2d 707, 709 (Iowa 1998) (imposing 100% of ten-year sentence for second-degree robbery not cruel and unusual). We have subsequently clarified that in making this assessment, courts should apply an objective test when measuring the harshness of the penalty against the gravity of the offense. *State v. August,* 589 N.W.2d 740, 743 (Iowa 1999); *accord State v. Laffey,* 600 N.W.2d 57, 61 (Iowa 1999).

■ Viewed objectively, we cannot say the punishment set by our legislature for the crime of first-degree burglary is grossly disproportionate to the harm sought to be punished and deterred. The crime of burglary has been historically viewed as an offense against the security enjoyed in one's habitat, tied to the ancient maxim that "a man's home is his castle." 3 Wharton's Criminal Law §§ 316, 325, at 223, 253 (1995). By definition, first-degree burglary requires proof of entry into an occupied structure where persons are present, with the intent to commit a felony, theft or assault and while the burglar possesses a dangerous weapon or incendiary device or inflicts bodily injury. Iowa Code § 713.3. The risk of harm to persons distinguishes the crime and elevates it in terms of proof and severity of punishment from second- or third-degree burglary. *See State v. Grimes,* 569 N.W.2d 378, 380 (Iowa 1997).

We are not convinced a legislature which severely penalizes an assailant for crossing the line from picking a fight on the lawn to forcibly invading the security of a victim's home thereby crosses the line into cruel and unusual punishment. The substantial difference in penalty only highlights the communal disdain for such intrusions. The fact that the penal consequences of such behavior falls heavily on the shoulders of a teenager is perhaps regrettable but not a factor in the analysis. *See Laffey,* 600 N.W.2d at 61. Indeed the legislature has furnished a statutory safety valve to ameliorate the effects of the penalty on a juvenile in the appropriate case. *See Terry,* 569 N.W.2d at 366 (discussing benefit to juvenile of good-cause provision of section 232.8(1)(c)).

In short, we find no merit to Rubino's claim that the sentence imposed for first-degree burglary is unconstitutional as applied to him in this case. Accordingly, Rubino's counsel was not ineffective for failing to raise the issue at trial. *State v. Ceaser,* 585 N.W.2d 192, 195 (Iowa 1998). No ground for reversal appears.

■ C. *Impeachment.* Strengthening the State's case was the testimony of two of Rubino's accomplices who received charging concessions in exchange for their

testimony against him. Rubino's trial counsel sought to cross-examine these witnesses extensively in order to discredit their testimony. The district court limited the inquiry, however, to questions concerning the *possible* outcomes and penalties faced if the witnesses were uncooperative. Rubino cites this limitation as error warranting reversal on appeal.

■ We review a trial court's decision to allow or disallow a line of questioning for abuse of discretion. *State v. Sackett,* 499 N.W.2d 312, 313 (Iowa App.1993). It is well settled that a defendant must be permitted wide latitude in seeking to show the bias of an alleged accomplice to the crime. *Id.* at 314.

The record reveals that Rubino's counsel elicited the following facts from each witness: (1) he entered into an agreement with the State in exchange for his testimony; (2) the plea bargain enabled him to be prosecuted in juvenile court; and (3) if his case had remained in adult court on a charge of first-degree burglary, he would have faced a "possible outcome" of twenty-five years in prison. Rubino claims this testimony "misleads the jury into thinking there are other possibilities less onerous and understates [the witness's] motive to lie on the witness stand." We disagree. The court deftly balanced Rubino's right to impeach these witnesses with its duty not to sidetrack the jury with concerns over the sentence facing Rubino. No abuse of discretion has been shown.

■ D. *Defense of justification.* Prior to trial, Rubino filed a Notice of Defense of Justification. His theory of defense was that his only purpose in entering Neiman's house was to wrest the gun from whomever had just shot his companion. At the close of the State's case, Rubino moved for judgment of acquittal on this ground. He now assigns error to the court's denial of his motion. The assignment is without merit.

■ A person is justified in using reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force. Iowa Code § 704.3. When the defense is raised, the burden rests upon the State to prove—beyond a reasonable doubt—that the alleged justification did not exist. *State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993). The State can meet its burden by proving any of the following facts:

1. The defendant initiated or continued the incident resulting in injury; or

2. The defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; or

3. The defendant had no reasonable grounds for such belief; or

4. The force used was unreasonable.

*See State v. Mayes,* 286 N.W.2d 387, 392–93 (Iowa 1979); *State v. Coffman,* 562 N.W.2d 766, 768 (Iowa App.1997).

We believe the record before us furnishes substantial proof from which a jury could find, beyond a reasonable doubt, that Rubino's reliance on the justification defense was unfounded. The State refuted the defense with proof that Rubino and his friends initiated the confrontation. When a shot was fired to scare them off, they could have retreated instead of storming the house. The fact that Rubino and the others moved aggressively into the house, rather than withdrawing, substantially weakens any claimed belief in imminent danger of injury or death. A jury could reasonably infer that Rubino's intent on entering the premises was not to quell a disturbance but to assault Tracey Neiman. Overall, the defendant's claim of self-defense strains credulity. The court properly refused to direct the verdict in his favor on this ground.

### III. Summary.

Rubino was clearly deprived of the effective assistance of counsel when his attorney repeatedly failed to appear and advocate on his behalf in connection with his

pretrial motion to be tried as a juvenile, rather than as an adult, for the crime of first-degree burglary. As to the trial that was subsequently held, however, Rubino has cited no errors warranting reversal. We therefore reverse the district court decision denying Rubino's motion for "reverse waiver," and remand for the hearing to which he was entitled under Iowa Code sections 803.6 and 232.8(1)(c). If on remand the district court determines that good cause compels transfer of the case to juvenile court, then the judgment entered upon Rubino's conviction for first-degree burglary shall be vacated. If the district court determines Rubino was properly tried as an adult, then the conviction shall stand.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED IN PART, CONDITIONALLY AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.**