# IN THE COURT OF APPEALS OF IOWA

No. 18-0526
Filed March 20, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GARY WAYNE ELLIOTT,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Poweshiek County, Shawn Showers, Judge.

Gary Elliott appeals from convictions for four counts of second-degree sexual abuse. **AFFIRMED.**

Gina Messamer of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

Gary Elliott appeals from his convictions for four counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1 (2011). He argues the district court erred when it rejected Elliott's proposed evidence that the minor victim had been sexually abused before. Alternatively, he argues that his counsel was ineffective for failing to argue the evidence was "constitutionally required" under Iowa Rule of Evidence 5.412 and asks this court to apply a different ineffective-assistance-of-counsel test than contained in existing law. Elliott also asserts trial counsel should have objected to alleged prosecutorial misconduct during the prosecutor's rebuttal closing argument.

**I. Background Facts and Proceedings.**

Elliott and his wife lived in Indiana, along with his wife's two biological children, who Elliott adopted when they were young. The Elliotts became foster parents to three children, including H.E., who was seven years old at the time she came to live with the Elliotts, and her younger brother. H.E. and her brother had been removed from their biological mother's care because H.E. had been sexually abused by her mother's boyfriend, who ultimately pled guilty to child molestation. In 2012, after living with the Elliotts for three years, H.E. and her brother were formally adopted. In August 2012, when H.E. was eleven years old, the family decided to move to Iowa.

Elliott and H.E. traveled to Iowa before the rest of the family to make repairs to the house and allow H.E. to begin the school year in Iowa. During the time only Elliott and H.E. were in the house, Elliott had sexual contact with H.E. When the

other family members moved to Iowa, H.E. did not tell anyone what had happened because H.E. "was too scared to say anything" and did not know how Elliott would react to what she said.

In 2014, H.E. wrote a letter to her adoptive mother explaining that Elliott had abused her when they first moved to Iowa. In the letter, H.E. told her adoptive mother that she did not want to tell what happened to her because "I'm afraid of losing you, Mom" and that "I can't lose you like I lost [her biological mother]." H.E.'s mother read the letter then discussed it with Elliott. He admitted to his wife that he was unclothed with H.E. while the two were alone in Iowa. His explanation was that he and H.E. had worked in the yard and were naked with each other at some point to check for ticks.

In 2016, the department of human services learned of H.E.'s allegations, and a police investigation ensued. Elliott repeated the tick explanation to law enforcement and also stated that there was a time when H.E. had taken a shower and he was waiting to take a shower when they would have been naked next to one another.

Elliott was charged with four counts of sexual abuse in the second degree. Prior to trial, the State filed a motion in limine seeking to exclude any evidence regarding H.E. having been sexually abused in the past. The State asserted H.E.'s prior abuse was inadmissible under Iowa Rule of Evidence 5.412, Iowa's rape-shield law. The defense sought to introduce evidence concerning the prior abuse on the following theory:

> MS. CROOKHAM-JOHNSON [DEFENSE COUNSEL]: We—
> once again, going back to the credibility and motivations of [H.E.] for
> making the allegations that she does against Mr. Elliott, we believe

it's important that there be discussion about what she did when she was a child, I believe of age six. [H.E.] is an adopted child. At six, she was living in her biological household that included a stepfather. Not only did she make allegations against the stepfather, he was convicted and may still be in prison for those events. And we believe that the actions that she took at that time compared to the actions that she took after these allegations are important to show an inconsistency in pattern of character for [H.E.] and how she responds to abuse.

THE COURT: So you want to get in the evidence that the alleged victim made an allegation against the stepfather that was proven to be accurate and that he was convicted and went to prison? Is that—and that that is somehow similar to this situation?

MS. CROOKHAM-JOHNSON: And that it is dissimilar to this situation because of the approach she took and the way she made the allegations and protected herself when something really happened as opposed to this time. When she was abused by her stepfather, her allegations were made within moments of the abuse happening, and those allegations were proven true. He pled guilty. There was not even a trial, and he was incarcerated. It was a very successful pattern of events for her in protecting herself. She demonstrated that she's able to protect herself instantly. And in this situation, she waited over two years to make the allegations and only made the allegations after some family arguments had taken place.

. . . .

MS. PETIG [PROSECUTOR]: Thank you, Your Honor. I believe that the rape shield law kicks into play here and that this evidence is precluded under Iowa Rule of Evidence 5.412. I would direct the court's attention to *State v. Jones*, 490 N.W.2d 787, an Iowa Supreme Court case from 1992 which indicates that under the rape shield law, past sexual behavior includes prior sexual abuse of the victim.

THE COURT: And I agree with the State. Had there been a prior allegation that turned out to be false, then I think you've got an argument that there is an exception under [5.]412. I think that that situation is the reason there's a rape shield statute to begin with. I understand the argument, and I want to be clear on the record that I believe that Rule of Evidence 5.412 precludes this sort of evidence from being offered, and I think I'll leave it at that.

H.E., sixteen years of age at the time of trial, testified about four specific incidents of sexual contact with Elliott when they first moved to Iowa and they were living alone together in the house. The 2014 letter H.E. wrote to her adoptive mother was introduced into evidence. H.E. stated she first felt relieved when her

mother read the letter, "but when nothing was done about it, I felt hurt." And when her mother did not report it to law enforcement, H.E. was upset "[b]ecause I thought she was supposed to protect me."

The defense again sought to admit evidence of prior abuse and proferred a report from Indiana. The court ruled:

> [I]f the allegation was in Indiana, [H.E.] had the same exact set of facts that were in the case in [Iowa], I think that the defendant here would have a pretty good constitutional argument that some of that evidence should come in. I don't think it's close enough in description to match this set of facts to meet one of the exceptions under the Rape Shield Statutes. There is an exception that, for essentially constitutional reasons, you need to allow the evidence. I don't think that standard's been met . . . .

The defense brought out testimony that Elliott and his wife had run a licensed day care in Indiana and were licensed foster parents. They had passed background and criminal checks, and there were no other allegations of sexual abuse concerning Elliott. Mrs. Elliott testified for the defense and stated H.E. gave her the letter in 2014 after an adult sister had returned home for several months and was getting attention from the Elliotts. Mrs. Elliott testified she, along with H.E., confronted Elliott with the letter. Elliott explained that he and H.E. had been working outdoors in long grass and had seen ticks on themselves: "And so they ended up declothing, taking their clothes off, just to make sure that they didn't miss any ticks." Mrs. Elliott testified,

> [I]t just seemed like every time things were going well in our home, she would do things to disrupt them. I mean, little things, but it kept escalating more and more and more. And I know there was the jealousy going on with her and [the adult sibling.] I don't know what provoked this.

She testified further that the Elliotts sought assistance from their church pastor, who suggested H.E. was perhaps triggered by former trauma or was engaging in self-seeking attention. Mrs. Elliott testified that after speaking with the pastor, Elliott addressed the letter again with H.E., who stated she wrote the letter because she was mad.

Mrs. Elliott testified her relationship with H.E. between 2014 and 2016 was "strained." She also described Elliott as a "God-fearing man" who thought it inappropriate for adults and children to be unclothed in front of each other. And she stated Elliott had several heart bypasses as a result of which "his sexual drive is pretty much gone" and he "cannot stand anything . . . touching his chest because of his scar." She stated Elliott did not sexually abuse H.E.

On cross-examination, Mrs. Elliott acknowledged she and Elliott used corporal punishment on the children "[i]f needed"—after adoption.[1] She acknowledged that could have included using a belt to hit the children. She also acknowledged Elliott admitted being naked in front of H.E.

Elliott was convicted as charged and now appeals.

**II. Scope and Standard of Review.**

The district court's rulings on the admissibility of evidence are reviewed for abuse of discretion. *See State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006) ("We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion.").

---

[1] As foster parents they agreed not to use corporal punishment.

Ineffective-assistance-of-counsel claims, which are constitutional in nature, are reviewed de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

## III. Discussion

*A. Evidence of prior abuse.* Elliott first argues he was denied his constitutional right to present a defense when the district court prohibited him from presenting evidence of H.E.'s prior abuse. He asserts exclusion of the evidence of the past abuse violated his due process rights, the right to confrontation, and the right to a fair trial under the federal and state constitutions.

The State responds that the only error preserved is Elliott's limited argument that the victim's prior abuse was relevant to the victim's credibility. We agree with the State that Elliott's new arguments of relevancy and the constitutional claims that were not presented to the district court are not properly before us for review. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

Iowa Rule of Evidence 5.412(a) provides that evidence of the past sexual behavior of the alleged victim of sexual abuse is not admissible. *State v. Edouard*, 854 N.W.2d 421, 448 (Iowa 2014). This rule is known generally as the rape shield law. *State v. Clarke*, 343 N.W.2d 158, 160–61 (Iowa 1984). The purposes of the rule are to (1) protect the privacy of victims; (2) encourage the reporting and prosecuting of sex offenses; and (3) prevent time-consuming and distracting inquiry into collateral matters. *State v. Ogilvie*, 310 N.W.2d 192, 195 (Iowa 1981).

Our supreme court has held past sexual behavior "encompasses prior sexual abuse perpetrated upon the victim." *State v. Jones*, 490 N.W.2d 787, 790

(Iowa 1992), *overruled on other grounds by State v. Plain*, 898 N.W.2d 801, 826 (Iowa 2017). Consequently, the evidence offered by Elliott of past sexual abuse perpetrated upon H.E. is inadmissible under by Iowa Rule of Evidence 5.412(a).

Rule 5.412(b)(1) provides an exception if the evidence is "[a]dmitted in accordance with rules 5.412(c)(1) and 5.412(c)(2) and is constitutionally required to be admitted." *See Edouard,* 854 N.W.2d at 449. Rule 5.412(c)(1) states a person seeking to offer evidence of specific instances of an alleged victim's sexual behavior must file a written motion to offer such evidence. The motion must be accompanied by an offer of proof. Iowa R. Evid. 5.412(c)(2). The court may then hold a hearing in chambers to determine if the evidence is admissible. *Id.*

Rule 5.412(c)(3)[2] provides:

> If the court determines on the basis of the hearing described in rule 5.412(c)(2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

In *State v. Jones*, the defendant was convicted of sexually abusing a ten-year-old. 490 N.W.2d at 789. He sought to admit evidence that the child had been sexually abused before, arguing the evidence was relevant to counteract the commonly-held belief that children have no basis of knowledge of sexual activity unless they had been abused before. *Id.* He also argued the evidence should be admitted to show the child was confusing the incidents of her previous sexual abuse with her alleged abuse by Jones. *Id.* at 790. The supreme court held that

---

[2] The substance of this rule is now found at Iowa Rule of Evidence 5.412(c)(2)(C).

the term "past sexual behavior" of rule 5.412 "clearly encompasses prior sexual abuse perpetrated upon the victim." *Id.* The supreme court then addressed whether evidence of prior sexual abuse was admissible under the constitutional-relevancy exception in rule 5.412(b)(1) and found the proffered evidence inadmissible. *Id.* Under the analysis of *Jones*, we conclude the district court did not abuse its discretion in excluding the evidence of prior sexual abuse here.

*B. Ineffective assistance of counsel.* Elliott alleges his trial counsel was ineffective for failing to comply with the procedural requirements of Iowa Rule of Evidence 5.412, in failing to make a constitutional argument for admission of the complaining witness's prior sexual abuse, and in failing to object to the prosecutor's closing argument.

We ordinarily preserve ineffective assistance of counsel claims for postconviction relief proceedings. *Clay*, 824 N.W.2d at 494. "That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *Id.* (quoting *State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999)). "We will resolve the claims on direct appeal only when the record is adequate." *Id.*

To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* test by showing "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Id.* at 495. Elliott acknowledges the record is inadequate to establish prejudice but requests that we overrule the requirement that it is a defendant's burden to establish prejudice. "We are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64

(Iowa Ct. App. 2014).  Because the record is inadequate, we preserve the claims for possible postconviction-relief proceedings.

**AFFIRMED.**