# IN THE COURT OF APPEALS OF IOWA

No. 18-1327
Filed October 9, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AMBRASHIA MARIE CHRZAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Washington County, Myron Gookin,

Judge.

        Ambrashia Chrzan appeals her conviction for child endangerment resulting

in death.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, (until withdrawal) and Maria

Ruhtenberg, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Ambrashia Chrzan appeals her conviction for child endangerment resulting in death, in violation of Iowa code section 726.6(1)(d), (3), (4) (2016).  She asserts trial counsel was ineffective in failing to object to prior-bad-acts evidence and in failing to object to a jury instruction that prior statements made by the defendant could be considered as if made at trial.[1]  We affirm the conviction, preserve the first ineffective-assistance claim for possible postconviction proceedings, and reject the second ineffective-assistance claim on the merits.

The district court recited the following "credible evidence" in its ruling denying the motion in arrest of judgement or for new trial:

> (a) A.M. was born prematurely with a positive blood test for methamphetamine and was therefore immediately removed from [Chrzan's] custody and placed in foster care.
> (b) Due to the premature birth, A.M. had a low birth weight and weighed approximately 4 lbs. when placed in foster care on June 16, 2015, approximately two weeks after birth.
> (c) Due to A.M.'s low weight, her primary physician, Dr. Nacos, followed her progress with frequent appointments.
> (d) While in foster care, A.M. thrived and gained weight.  She caught up on weight enough to be "on the growth chart" used to measure infant development.
> (e) A.M. returned to [Chrzan's] care on December 4, 2015.  The day before, on December 3, 2015, A.M. had a wellness check with Dr. Nacos and weighed 14 lbs. 2.5 oz.
> (f) On the first wellness check after A.M. had returned to [Chrzan's] care, occurring January 25, 2016, A.M. continued to do well, weighing 15 lbs.
> (g) The next appointment for A.M. was set for late March 2016.  No one appeared for the appointment.  The appointment was reset for May 27, 2016.  No one appeared for the appointment.

---

[1] The Iowa legislature amended Iowa Code section 814.6 and 814.7, effective July 1, 2019, limiting direct appeals from guilty pleas and eliminating direct-appeal ineffective-assistance-of-counsel claims.  2019 Iowa Acts ch. 140, §§ 28, 31 (to be codified at Iowa Code §§ 814.6 – .7).  The amendments "apply only prospectively and do not apply to cases pending on July 1, 2019," and therefore do not apply in this case.  *State v. Macke*, ___ N.W.2d ___, ___, 2019 WL 4382985, at *7 (Iowa 2019).

(h) The appointment was reset for July 5, 2016. [Chrzan] brought A.M. to the July 5, 2016, appointment. Her weight had decreased to 14 lbs., 5 oz., despite [Chrzan's] claims she was eating well. Dr. Nacos was concerned that A.M. was losing weight instead of gaining weight and recommended a follow-up examination by a pediatric specialist at the University of Iowa Hospitals and Clinics concerning A.M.'s failure to thrive. He stressed the importance of this follow-up appointment to [Chrzan]. A follow-up appointment with Dr. Nacos was set for September 6, 2016, in the hope an appointment at U of I Hospitals and Clinics could be accomplished in the interim.

(i) An appointment was arranged for A.M. at the U of I Hospitals and Clinics for September 13, 2016.

(j) No one appeared for either the September 6, 2016, appointment with Dr. Nacos or the September 13, 2016, appointment at the U of I Hospitals and Clinics.

(k) The September 6, 2016, appointment with Dr. Nacos was reset to September 23, 2016. [Chrzan] took A.M. to the September 23, 2016 appointment. Despite [Chrzan's] claims that A.M. continued to eat well, A.M.'s weight was 15 lbs., the same as nine months earlier at the January 25, 201[6], appointment. Dr. Nacos again stressed how important it was for A.M. to be seen at the U of I Hospitals and Clinics to determine why A.M. was apparently eating well, according to [Chrzan], but failing to thrive.

(*l*) The U of I appointment for A.M. was reset for October 11, 2016. Again, no one appeared for the appointment. The U of I attempted calling all phone numbers provided by [Chrzan] but could reach no one.

(m) On November 9, 2016, A.M. was found deceased in her bed.

(n) An autopsy of A.M. was performed by University of Iowa Hospitals and Clinics Forensic Pathologist, Dr. Dennis Firchau, on November 10, 2016. A.M. weighed 11 lbs. at the time of the autopsy. Based upon the autopsy, it is Dr. Firchau's opinion A.M.'s manner of death is a homicide and the cause of death is undetermined, with malnutrition and associated neglect. Although Dr. Firchau could not determine the specific cause of death, in his opinion A.M.'s malnutrition and associated neglect contributed to, or played a role in, her death. The "associated neglect" to which Dr. Firchau refers relates to a pattern of significant weight loss leading up to death and the failure by caregivers to seek appropriate medical care for A.M. The loss of 4 lbs. by A.M. from September 6, 2016, to the date of death, according to Dr. Firchau, contributed to his opinion concerning the cause and manner of A.M.'s death.

We review ineffective-assistance claims de novo. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

> This is our standard because such claims have their "basis in the Sixth Amendment to the United States Constitution." We ordinarily preserve such claims for postconviction relief proceedings. "That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." We will resolve the claims on direct appeal only when the record is adequate.

*State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012) (citations omitted).

To prove a claim of ineffective assistance of counsel, a defendant must show (1) trial counsel failed to perform an essential duty, and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citation omitted).

With respect to the claim that counsel should have objected to prior-bad-acts evidence, first, we note defense counsel filed a motion in limine to prohibit evidence of prior bad acts. The State responded, "Your Honor, we don't have any objections. I'm not aware of any prior bad acts. If we are aware of something, we will bring it to the court's attention outside the presence of the jury."

On appeal, Chrzan argues the following evidence was irrelevant or unduly prejudicial:

- [C]ounsel for the defendant should have objected to evidence that the defendant, Ambrashia Chrzan, used street drugs while pregnant with A.M. and that the child was born positive for amphetamines.
- [T]he State introduced the medical records from the regular doctor visits for A.M. State's exhibits 3 through 14 are all records from A.M.'s visits with

Dr. Nacos. Every one of these exhibits contains the phrase: "Prenatal maternal history of street drugs used during pregnancy."

- The [autopsy] report states that A.M.'s meconium drug screen tested positive for amphetamines.
- [C]ounsel for the defense elicited testimony from A.M.'s [Department of Human Services] case worker that A.M. was removed from the custody of [Chrzan] because she tested positive for amphetamines.

Chrzan argues: "Since the State alleged that the defendant committed this crime by failing to provide food and health care, evidence that she used street drugs during her pregnancy was irrelevant to prove the crime charged." The State notes counsel may have had strategic reasons for allowing the evidence of drug use to be presented and for affirmatively bringing the evidence to the jury's attention—to explain why the child was removed from the mother's care and placed in foster care.

We believe this issue is better assessed in postconviction-relief proceedings, "where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *Clay*, 824 N.W.2d at 494 (Iowa 2012) (quoting *State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999)). We therefore preserve this ineffective-assistance claim for possible postconviction-relief proceedings.

Chrzan also contends defense counsel was ineffective for failing to object to the use of uniform jury instruction 200.44, which provides: "Evidence has been offered to show that the defendant made statements at an earlier time and place. If you find any of the statements were made; then you may consider them as part of the evidence, just as if they had been made at this trial." This court has rejected similar claims on a number of occasions. *See, e.g.*, *State v. South*, No. 18-0356, 2019 WL 1294101, at *2 (Iowa Ct. App. Mar. 20, 2019); *State v. Moore*, No. 17-

1822, 2019 WL 478236, at *2 (Iowa Ct. App. Feb. 6, 2019), *aff'd on this ground*, 2019 WL 4228986 , at *1 (Iowa Sept. 6, 2019) (per curiam) ("[W]e choose to let the court of appeals decision stand as our final decision regarding the ineffective-assistance-of-counsel claims."); *State v. Lopez-Aguilar*, No. 17-0914, 2018 WL 3913672, at *8 (Iowa Ct. App. Aug. 15, 2018) ("This court has repeatedly found the challenged instruction to be a correct statement of the law and repeatedly rejected the same argument."), *further review denied*; *State v. Garcia*, No. 17-0111, 2018 WL 3913668, at *4 (Iowa Ct. App. Aug. 15, 2018) (finding counsel did not breach an essential duty in failing to object to the instruction), *further review denied*; *State v. Yenger*, No. 17-0592, 2018 WL 3060251, at *4–5 (Iowa Ct. App. June 20, 2018), *further review denied* (Sept. 13, 2018); *State v. Hayes*, No. 17-0563, 2018 WL 2722782, at *5 (Iowa Ct. App. June 6, 2018) ("This court recently held this instruction correctly states the law and giving the instruction was not in error." (footnote omitted)), *further review denied*. Because the instruction is a correct statement of the law, trial counsel had no duty to object to it. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Counsel has no duty to raise an issue that has no merit.").

We affirm the conviction, preserve the first ineffective-assistance claim for possible postconviction proceedings, and reject the second ineffective-assistance claim on the merits.

**AFFIRMED.**