# IN THE COURT OF APPEALS OF IOWA

No. 23-0429
Filed June 5, 2024

**JAMES ALLEN BREEN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Patrick R. Grady,
Judge.

James Allen Breen appeals the denial of his application for postconviction
relief. **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney
General, for appellee State.

Considered by Greer, P.J., Buller, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2024).

**DOYLE, Senior Judge.**

James Allen Breen appeals the denial of his application for postconviction relief (PCR) from his convictions for attempted murder, willful injury, and carrying weapons. He contends his trial attorney was ineffective in presenting a justification defense. Because Breen has not shown a reasonable probability that the outcome would have been different if his attorney had performed as he wishes, we affirm.

### I. Background Facts and Proceedings.

Breen's convictions stem from a November 2012 shooting outside a bar in Cedar Rapids. Breen was drinking at the bar when he argued with Sean Hiepler and challenged Hiepler to take the argument outside. After exiting the bar, Breen drew and aimed a handgun at Hiepler. When Hiepler tried to take the gun, Breen stepped back and cocked it. Hiepler's cousin, Cory Forbes, tackled Breen as Breen fired three times. Two bullets struck Forbes in his abdomen, and one hit him in the thigh.

The State charged Breen with attempt to commit murder, willful injury, going armed with intent, and carrying weapons. In January 2013, Breen gave notice of his intent to rely on justification and intoxication defenses. But a May 2013 pretrial order indicates that Breen was not asserting an affirmative defense.[1]

In an opening statement at the bench trial, the prosecutor argued that the evidence would show Breen's "actions were not just voluntary and willful, they were intentional, they were done with an intent to kill, his actions were not justified." Breen's attorney reserved her opening statement until after the State presented its

---

[1] The typed order states, "Defendant asserts the following affirmative defenses:" with a handwritten "N/A" appearing on the line beside it.

evidence, arguing that Breen was extremely intoxicated and lacked the specific intent to commit murder.

Breen testified in his own defense. He remembered being attacked outside the bar and hearing gunshots but did not recall pointing the gun at Hiepler or pulling the trigger. Breen also called a pharmacology expert to testify about the effects of alcohol on a person's executive functioning. Based on test results from a blood sample taken from Breen forty-five minutes after the shooting, the expert estimated that Breen's blood alcohol level at the time of the shooting was between .280 and .287—high enough that it would impair one's abstract reasoning and may cause anterograde amnesia. He concluded that Breen's level of intoxication prevented him from forming specific intent.

At the close of trial, the prosecutor argued that Breen was not too intoxicated to form specific intent. He also argued that Breen's actions were not justified because the credible evidence shows he initiated and escalated the confrontation outside the bar.

Breen's attorney focused her closing argument on Breen's intoxication defense arguing the evidence failed to show that Breen had the specific intent to cause Forbes serious injury or death. But she briefly raised justification, arguing that Breen's act of asking Hiepler to "take it outside" did not prevent him from claiming he acted in self-defense:

> [W]e would submit to the court that at the time that the struggle happened, these people were halfway down the building in a very dark, remote location. It is not difficult or hard to believe that Mr. Breen was walking up ahead and he was surprised and tackled, just like he claims, because he felt that he was in a dangerous situation and he turned around and he felt he needed to defend himself.

During his rebuttal argument, the prosecutor again argued Breen was not justified in shooting Forbes:

> I believe the evidence in this case shows that when the defendant left Rumors bar, after inviting the other to—Sean Hiepler to go out with him and he rounded that corner, he had no reason to believe that he was in any danger and he had no reason or justification for producing a firearm and pointing it at Sean Hiepler. Self-defense does not apply here. He provoked, he initiated this conflict, he had no reason to believe when he went outside of that bar that he was in any danger to require the use of deadly force.

The trial court found Breen guilty of attempt to commit murder, willful injury, and carrying weapons. After summarizing the evidence Breen presented regarding his intoxication, the court detailed how Breen's actions showed he purposefully shot Forbes with the specific intent to inflict serious injury on him and kill him. The court found, "This action was not justified." A footnote explains, "The defense of self-defense was not pled in this case and the Court finds it is not otherwise justified under the circumstances present in this case." We affirmed Breen's convictions on direct appeal. *See State v. Breen*, No. 13-1478, 2015 WL 1546355, at *1 (Iowa Ct. App. Apr. 8, 2015).

Breen applied for PCR in 2016 based on ineffective assistance of trial counsel. Breen alleged that his trial counsel was ineffective by failing to make it clear to the trial court that he was asserting a justification defense. He argued his trial attorney was ineffective by deferring the opening statement until after the State rested and not asserting the justification defense during it. He also argued that his attorney was ineffective by not raising in a post-trial motion the court's failure to consider the justification defense when weighing the evidence that he committed attempt to commit murder and willful injury.

Breen's trial attorney testified at the PCR hearing. She explained that she planned to present both the justification and intoxication defenses at trial. Her strategy changed when she viewed the crime scene with Breen's firearms expert the day before trial. While at the scene, the expert stated that Breen had to have been on top of Forbes when the gun fired. Breen's attorney decided to downplay the justification defense because she believed it conflicted with this view.

The PCR court found that Breen's attorney breached an essential duty "by leaving the record unclear as to the defense of justification." It noted that Breen's attorney did not intend to withdraw the defense from consideration but "attempted to contour the evidence to avoid the potential introduction of damaging evidence from [Breen's] expert." The court found that Breen's attorney pursued both defenses "without objection" and the prosecutor "fully believed that justification was still in the case." But the trial court's ruling states that Breen did not raise a justification defense, and Breen's attorney never alerted the court to this error. On this basis, the PCR court concluded that Breen's trial attorney breached a duty.

Still, the PCR court determined that Breen was not prejudiced by counsel's failure:

> First, [the trial court's] verdict on the charge of going armed with intent and the reasons underlying it show that [it] did not find that Breen was the person who initiated the struggle that resulted in Breen shooting Forbes. Further [the] findings with regard to Breen's intent during the struggle and [the] conclusion that Breen was not justified show that [it] found Breen's use of force, even deadly force, was not reasonable under the circumstances. This eliminates the two most significant, disputed elements under a claim of justification in this case.

The PCR court noted that the result may have been different if the case was tried by jury. *See State v. Stallings*, 541 N.W.2d 855, 858 (Iowa 1995) (rejecting claim

that no prejudice resulted from court's failure to instruct the jury on reasonable force because it was unclear whether the jury's finding that the defendant was not justified in his use of deadly force was based on proof that the defendant used unreasonable force or one of the alternate elements included in the instruction). But it found that the trial court's detailed ruling "alleviates any doubt this court has in the result of this case because [its] findings provide more clarity as to [its] conclusions than a general verdict."

### II. Scope and Standard of Review.

We review the denial of PCR for correction of errors at law. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). We review claims of ineffective assistance of counsel and other claims of a constitutional nature de novo. *See id.* We give weight to the PCR court's findings but are not bound by them. *See id.*

### III. Ineffective Assistance of Counsel.

Breen argues that the PCR court correctly concluded that his attorney breached an essential duty by failing to present a justification defense clearly. But he challenges the determination that he was not prejudiced by his trial attorney's failure. Breen must show: (1) that his trial counsel failed to perform an essential duty and (2) this failure prejudiced him. *See id.* "If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Id.* at 522 (citation omitted).

Iowa Code section 704.3 (2012) states, "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force." At the time the shooting occurred, the legislature defined "reasonable force" as

"that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss."  Iowa Code § 704.1.  The burden is on the State to prove beyond a reasonable doubt that the defendant's actions were not justified.  *State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999).

> The State can meet its burden by proving any of the following facts:
>     1. The defendant initiated or continued the incident resulting in injury; or
>     2. The defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; or
>     3. The defendant had no reasonable grounds for such belief; or
>     4. The force used was unreasonable.

*Id.*

Breen argues that his trial counsel's failure to effectively prepare, develop, and present a justification defense prejudiced him because the trial court "did not hear the testimony and receive the evidence with the special defense in mind and was probably only thinking about evidence in terms of intent."  He also argues that because of counsel's failure, the trial court "did not explain or even acknowledge the applicable law and did not make any special findings on the defense of justification."  We choose to focus our review on the prejudice prong, and we conclude Breen cannot show a reasonable probability the result would have been different if the court had done so.  Based on its fact findings, the court would likely have found the State proved beyond reasonable doubt at least one the facts needed to prove Breen's actions were not justified.

The trial court based its fact findings about the events of that night largely on Hiepler's testimony and found that Breen purposefully shot Forbes and did so with the specific intent to inflict serious injury on Forbes and to kill him.  Hiepler

testified that Breen wanted to leave the bar and asked for a ride home, but Hiepler was not ready to leave. According to Hiepler, Breen became hostile, his tone of voice getting more aggressive. Breen asked Hiepler, "You want to take this outside?" Thinking there would be a fist fight when they got outside, Hiepler replied, "Yeah, let's go." After they exited the bar, Breen rounded the corner of the building and Hiepler lost sight of him. When Hiepler came around the corner, he saw Breen standing just out of arm's reach and pointing a gun at his chest. Hiepler testified that he took a step forward, thinking that he should "hurry up and rush" Breen to take the gun. But as Hiepler stepped forward, Breen moved back. Then Forbes, who had been standing to Hiepler's left, "came around, tackled [Breen], and they went to the ground. As those two were going to the ground, shots were fired." From Hiepler's testimony, the court found that

> although [Breen] may not have intended to shoot anyone when he first exited the bar and drew the weapon, once he was being tackled by Cory Forbes, [Breen] intended to inflict serious injury upon Mr. [Forbes] and cause [Forbes's] death by pulling the trigger three separate times, the last of which occurred while [Breen] was on top of [Forbes]. *This action was not justified.*

(Emphasis added.)

Although Breen does not remember much about the shooting,[2] he refuted Hiepler's testimony during the PCR proceedings by offering an alternative version

---

[2] Breen testified to what little recollection he had of the events that night:
> Q. When you are outside, do you have any recollection of how you're feeling? A. I was feeling kind of tense and kind of, like, warm.
> Q. Did you say warm? A. Yeah. The way to describe the warmth would be how I looked in the—my mug shot picture when I got booked in, that kind of tense warm inside.
> Q. What is the next recollection that you have? A. After that, I noticed I was outside. I was getting ready to turn around. By the time I could turn around back to the building, I got attacked.

of events. He notes that a witness who passed Breen, Hiepler, and Forbes as they were exiting the bar testified that he heard talk of a car ride but that "it didn't seem anybody had a raised voice or anything at that time." From there, Breen questions if he really asked Hiepler to "take it outside" before suggesting that Hiepler and Forbes attacked him while he was walking home:

> [Breen] *could have* heard the other two rushing up from behind to jump him. He *could have* turned around, attempting to defend himself with his handgun. He *may have* not even realized who was rushing him. [Breen] also posits that Hiepler very well *could have* gotten involved in the struggle for the gun when it went off.

(Emphasis added.) Breen argues that his counsel should have emphasized these discrepancies. But as the italicized text shows, this alternative version of events is nothing more than speculation. We cannot find a reasonable probability that the result would have been different if Breen's trial counsel had presented this theory at trial.

> The likelihood of a different result must be substantial, not just conceivable. A defendant must show the probability of a different result is sufficient to undermine confidence in the outcome. This standard requires us to consider the totality of the evidence, identify what factual findings would have been affected, and determine if the error was pervasive or isolated and trivial.

*State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (citation omitted).

---

Q. What is the next recollection you have? A. After being attacked, I remember getting hit with either elbows or fists. And then I heard shots, and the body that was on me—at once was, like, forceful to where I couldn't move it. But then after I heard shots, it became like—like a limp fish and I was able to get it off me, and I was able to get up. So I got up and tried to run.

Q. What is the next thing that you remember? A. Then I remember I got started getting hit once my vision came back. And then the police officer.

Breen also cites evidence that he believes "impeaches" Hiepler's testimony. But the trial court heard this evidence and found Hiepler to be a credible witness. Because the trial court acted as the fact finder, its decision has the same force as a jury verdict. *State v. Sinclair*, 622 N.W.2d 772, 778 (Iowa Ct. App. 2000). As fact finder, it was the trial court's job "to weigh the evidence and 'place credibility where it belongs.'" *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (citation omitted). The trial court was free to give as much weight to each witness's testimony as it felt the testimony should receive and accept or reject any of it. *See id.* We defer to its findings. *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012).

We agree with the PCR court's determination that Breen was not prejudiced by any deficiencies in counsel's performance. We affirm the denial of his PCR application.

**AFFIRMED.**